The Flagstaff S. M. Company of Utah v. J. N. H. Patrick et al.

# THE FLAGSTAFF S. M. COMPANY OF UTAH, Limited, Respondent, v. J. N. H. PATRICK et al., Appellants.

Corporation, Agent of Enjoined.—When a Corporation holds possession of its property by an agent, and such agent is discharged, and the possession of such property is taken by another agent duly authorized, *Held*, That if the possession of the latter is threatened by the former, the discharged agent will be enjoined by the corporation from any interference with the possession.

2. Removing Agent, no Change of Possession.—The possession of the property of a corporation by its agent, is the possession of an agent for his principal, and the removal of such agent and the entry into possession thereof by a new agent is not a change of possession.

3. Agent Holds at Pleasure of Principal.—It is a general doctrine that an agent holds his authority at the pleasure of his principal, and the only exception to the rule is when the power of attorney held by the agent is coupled with an interest in the property, founded upon a valid consideration.

4. Powers of a Board of Directors of Corporation.—When by the articles of incorporation it is provided that the board of directors shall have power to appoint and remove the agents of the corporation, the power thus given is a trust reposed in the direc ors alone, and they are not at liberty to enter into any agreement by which such power is surrendered to a stranger.

5. Powers of a Board of Directors of Corporation, Removal of Agents.—The power to appoint and remove agents and the managers of the affairs of an incorporation, rests with the company itself and cannot be shifted or transferred by any contract made by the board of directors.

6. Ultra Vires.—A corporation is not bound by an unauthorized contract made by its board of directors, such contract can be treated as *ultra vires* and is not binding upon the corporation.

7. Allegations on Information and Belief.—Under section 113 of our Practice Act the allegations of a complaint can be made on information and belief.

8. Injunction to Prevent Interference with Possession.—Where there is a well grounded fear that a discharged agent of a corporation will use force to repossess the property in charge of its duly appointed agent, a court of equity will protect such possession by injunction.

Appeal from the Third Judicial District Court.

The plaintiff was a mining corporation, organized under the "Companies Act" of 1862 and 1867, of the Kingdom of Great Britain, and its board of directors ordered the secretary to enter into a contract in its behalf with Erwin Davis, one of the defendants, by which it agreed to appoint defendant Patrick, its agent and manager of all its mining property, (which was situated in Utah Territory) and for his retention in that position, until out of the profits of the workings of the property, its said manager should pay to Davis certain moneys then claimed to be due him from the corporation. By the terms of this contract Patrick was removable at the pleasure of Davis.

Davis reserved in the contract his right to proceed against the corporation for his debt.

Patrick had under this contract received a power of attorney from the corporation, and acted as its agent and manager for about three years, at which time the corporation assumed to remove Patrick and appoint one A. G. Hunter as its agent, who by means of the arrest of one of the principal men at the mine on some charge, obtained possession of the mine and ousted the Patrick management, and refused to recognize any right of possession either in Patrick or Davis, or any obligation of the contract, claiming it to be void. Patrick and Davis it was alleged threatened to play the same tactics as Hunter did in getting possession of the mine, in order to regain the possession, whereupon Hunter being in possession commenced this action in the name of the company to quiet the possession.

The other facts are stated in the opinion of the court.

*Baskin & De Wolfe* and *Hempstead & Gamble*, for appellants.

The grounds upon which the plaintiff in the complaint predicates its right to an injunction, are stated on information and belief.

This is not sufficient. The grounds must be set out by direct and positive averment.

20

A traverse of allegations made on information and belief raises no triable issue. *Baskin & De Wolfe* v. *Godbe*, Utah R. 28; High on Inj. §§ 36, 986, 987.

The complaint alleges fraud in general terms, without specifying the facts constituting the fraud.

Fraud is a conclusion of law, and if the facts showing fraud are not set out, the evidence to prove fraud is inadmissible. Kerr on Fraud, p. 365–366; High on Inj. § 28.

Equity will not lend its aid to one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage. *Bein et al.* v. *Heath*, 6 How. S. C. 247; Broom's Legal Maxims, t. p. 545–547.

The plaintiff's possession was obtained by wrongful and unlawful means. See evidence and § 1196, p. 392, and 2066, p. 616 Revised Statute.

The contract between the plaintiff and Davis set up in the answer did not require the seal of the Flagstaff Company to make it valid and binding. § 37 Amendment of Companies Act, 30 and 31 Victoria, c. 131; *Cook* v. *Corporation of Seaford*, 10 Chancery, 678; Ang. & Ames on Corp. § 219, and cases cited; Addison on Cont. § 122; 4 Kent's Com. t. p. 521, N. (K.)

Section 20 of said articles limits this general power in this: it prohibits the company from borrowing on mortgage or debentures, either transferable or to bearer, any sum exceeding one hundred thousand pounds, and the board from borrowing without the sanction of a general meeting, on like securities or on bills of exchange, any sum exceeding ten thousand pounds.

As the advancements by Davis were not made on mortgage, debentures or bills of exchange the transaction was not in violation of the articles, but was authorized by the general powers of the company, which section 20 does not limit but leaves in full force. *Agar* v. *Athenæum Ins. Co.*, S. C. B. (N. S.) 724–750; see *Fay et al.* v. *Noble et al.*, 12 Cush. 1; *Campbell* v. *The Merchants'*, etc., 37 N. H. 41.

In regard to the objects of its creation it has the same power as a natural person, and may do any act which an individual could do in relation to similar objects, unless restricted by statute or charter. Angell & Ames on Corp. §§ 110, 6, 2, and 4; *Smith* v. *R. R.*, 27 N. H. 94; *Dana* v. *Bank of U. S.*, 5 Wats. & S. 243; *Bank of Utah* v. *Dandy*, 12 Wheat. 64.

It is well settled that an agency coupled with an interest, either in favor of the agent or a third party, if recognized or acted on by such third party, is irrevocable. Story on Agency, §§ 476–477; 2 Story's Equity Jurisp. §§ 1041–1042.

It therefore follows that any act in violation of said articles may be ratified, and even if the contract between plaintiff and Davis was (as it is not) *ultra vires*, Davis having performed all of the conditions of the same on his part, and the plaintiff having received, used in its business and retained large sums of money under said contract, and having recognized and acted under the same for three years is estopped as an individual would be under like circumstances, from denying the validity of said contract, and is bound by the same. *Bradly* v. *Ballard*, 55 Ill. 413, (8 American Rep. 656); *Bissell* v. *Michigan Southern R. R.*, 22 N. 258; *Parish* v. *Wheeler*, Ibid. 494; *Argenti* v. *San Francisco*, 16 Cal. 256; *San Francisco Soap Co.* v. *City*, 9 Cal. 453; *Fause* v. *Wines*, Hopkin's Chan. 322; *Steam Navigation Co.* v. *Weed*, 17 Barb. 380 and cases cited; *Moss* v. *Lead Co.*, 5 Hill, 137; *Hale* v. *The Union Mutual Insurance Co.*, 32 N. H. 295; *Moran* v. *Commissioners*, 2 Black, 722; *State Board* v. *Citizen's Street R. R.*, 47 Ind. 407; 1 Addison on Conts. § 124, Ib. 3 vol. p. 410; *Township of Pine Grove* v. *Tolcott*, 19 Wal. 679, 468; *City Fire Insurance Co.* v. *Carrugi*, 41 Ga. 660; 2 U. S. Dig., New Series 174, § 80; *Backman* v. *Charleston*, 42 N. H. 125; *Agar* v. *Athenæum Ins. Co.*, 5 C. B. (N. S.) 724–750; *Royal British Bank* v. *Turquand*, 5 Ell. & B. 246; *Royal British Bank* v. *Turquand*, 6 Ell. & B. 327; Lindley on Partnership, 202 to 207–212; *Phosphate of Lime Co.* v. *Green*, 1 Moak, 98; *Lordon* v. *Preston*, 1 Watts. 387.

A party cannot rescind a contract even for fraud, without restoring the other party to the same condition that he would have been in had the contract not been made, and if the party injured chooses to rescind, he must do so at once on discovering the fraud, otherwise he ratifies the contract and is bound thereby. 2 Parsons on Contracts, p. 679 N. (A), 780–786, 782, and cases cited; *Cobb* v. *Hatfield*, 46 N. Y. 533; Kerr on Fraud, 47; many cases might be cited to the same effect.

Under the law and the facts disclosed, the court should, by mandatory injunction, restrain the plaintiff from further interfering with the discharge, by Patrick, of his trust under said contract, pending the litigation; thereby restoring the parties to the condition which they occupied at the time the plaintiff resorted to force and the unwarranted use of criminal process to enforce a right which the courts alone 'had the right to determine or enforce. As to the power of the court to issue such an injunction see High on Inj. §§ 2, 478; Hilliard on Inj. p. 39, § 31; Adams Equity, p. 428; *Rankin* v. *Huskinson*, 4 Linm. 16; *Lane* v. *Midegott*, 10 Ves. 192.

*Sutherland & McBride* and *Rosborough & Merritt*, for respondents.

The complaint makes out a sufficient case under § 254 Pr. Act. It sets up plaintiff's title in fee and possession of the mine, which are admitted, and that defendant, Davis, claims an adverse interest in the property, and asks that the same be determined. § 254 enlarges the class of cases in which equitable relief could formerly be sought in quieting title. *Curtis* v. *Sutter*, 15 Cal. 259; 32 Cal. 109.

The allegation upon information and belief is sufficient under § 113 Pr. Act. Indeed, the form is quite appropriate, where the intent and purpose of an adversary are in point, and the existence of the intent at the time is admitted by the evasive and equivocal denial in the answer that the defendants " threatened, threaten or intend " to seize the mine, etc.

There has been no change of possession of the mine. The

Flagstaff Company has been in possession of it more than three years; there was only a change of managers or agents of the company.

But, even if the entry had been forcible and wrongful, a court of equity will not grant the injunction sought against the plaintiff. 50 Ill. 459; 32 Cal. 109.

On the facts of this case, however, there was no force. On this subject see 45 Cal. 677; 45 Cal. 673; 38 Cal. 422.

But appellants insist that the alleged contract of December 16, 1873, created a lien upon the mine or unsevered ore therein in favor of Davis, and a trust for its enforcement, and took from the company its corporate power of appointment on a motion of its chief executive officer, and invested that power in Davis, and that the court ought now to exercise that power by imposing Patrick still as manager.

The contract with Davis is *ultra vires*, because it takes away from the company the power to appoint and remove its chief officer. The manager of an English mining corporation is its most important officer, and holds in his hands its property, its credit and all its chances of success. The power of appointment and removal of officers is necessarily incident to every corporation. Angell & Ames on Corp. §§ 110, 433–4; 2 Kent. 297; Grant on Corp. 243; *Neall* v. *Hill*, 16 Cal. 145; *Atty. Gen.* v. *Earl Clur*, 17 Vesey, 491; *Bayless* v. *Orne*, 1 Freeman Ch. R. 171; Plaintiff's By-laws, § 33.

How can the court then grant the relief asked in this case? By ousting the present manager and remitting a discharged agent? Such a proceeding would be to decree a dissolution of the corporation. 17 Vesey, 491; 1 Freeman Ch. R. 171; *Neall* v. *Hill*, 16 Cal. 145, *supra*.

A corporation is not bound by acts of its directors or officers, *ultra vires*, and such acts are not capable of ratification in any case where the power to act or contract in the particular matter does not exist. *Miners' Ditch Co.* v. *Zellerbach*, 37 Cal. 543; *Marsin* v. *Same*, 38 Cal. 300; *Zottman* v. *San Francisco*, 20 Cal. 96.

It is admitted that a corporation may, in its ordinary business concerns, make contracts not under seal; but the rule has always been and still is, that in conveying land, or creating an interest in, or charge or lien upon land, the contract of a corporation must be under its corporate seal. Angell & Ames on Corp. § 219; 5 East. 240; 8 East. 228; 2 Cranch. 166; Grant on Corp. 147; *Bank of U. S.* v. *Dandridge*, 12 Wheat, 105; 1 Parsons on Con. 140-1; Lindley on Part. 287.

The contract is illegal and void, having been entered into for fraudulent and illegal purposes, and in violation of the by-laws and charter of the company. Art. Association, § 20; Affi't of Hunter, Tr. p. 61-2; *Pierce* v. *I. R. R. Co.*, 21 How. 442; *Martin* v. *Zellerbach*, 38 Cal. 300.

Parties dealing with directors of a corporation as well as those dealing with any other agents, are bound to take notice of their authority. The plaintiff has no power to create an obligation by borrowing money, except in the modes prescribed by its charter, and the law never implies an obligation to do that which it forbids the party to agree to do. 20 Cal. 104-5; 5 Denio, 567; Lindley on Part. 201; Addison on Cont. § 124.

BOREMAN, J., delivered the opinion of the court:

The respondent (plaintiff below) a mining corporation organized and existing under the laws of Great Britain, made, through its directors, a contract with Erwin Davis, one of the appellants, for the appointment of J. N. H. Patrick as agent and manager of the company's properties and business in Utah, and for Patrick's retention in the position until out of the profits of the mine Patrick should repay to Davis moneys advanced to the company, and until Patrick should mine and deliver to Davis, and smelt certain ores. By the terms of this contract, Patrick was, for an indefinite time, removable at the pleasure of Davis, but could not be removed by the company. It further provided that Davis could appoint a successor to Patrick, and Davis expressly reserved all of his rights to pro-

ceed against the company for the non-payment of the money to be advanced the company and for non-delivery of the ores sold to him. The company at the same time executed to Patrick a power of attorney to attend to all of its business in Utah, and to take charge of all its properties in Utah.

After this contract with Davis and this power of attorney to Patrick had existed about three years, the respondent (the company) assumed to remove Patrick and appoint as its agent in his stead Andrew G. Hunter. Hunter arrived here, and Patrick being out of the Territory, he (Hunter) applied to Patrick's foreman (George Cullen) at the Flagstaff mine, the property of respondent, for possession, and possession was refused him. He thereupon has Cullen arrested as a trespasser and then entered into possession of the company's property, the other employees at the mine recognizing his authority to represent the company. The company then bring this suit, alleging that Patrick and Davis are out of the Territory, but that Cullen and Walker, the other two defendants, acting for Patrick and Davis, threaten to seize the mine in dispute, said Davis and Patrick claiming the possession; and plaintiff asks that the defendants may be restrained from entering into or upon said mining property.

The application for a temporary injunction was heard by the judge of the Third District Court at chambers, and, after the hearing, he granted the temporary injunction prayed for, and thereupon the defendant appealed to this court.

In considering the matter before us, we are to keep in view the fact, that during all the time of the dispute between Patrick and Hunter, the ownership and possession of the mining property in question remained in the respondent, the Flagstaff company; that Patrick acted as agent for the company, and Hunter does likewise. So plaintiff has not been out of possession, and the dispute is alone as to who is the authorized agent of the company, Patrick or Hunter. We think that this fact has to some extent been lost sight of in the consideration of the case by the parties.

But the defendants say that the possession of plaintiff was only through Patrick, under the contract with Davis, and that "plaintiff's possession was obtained by wrongful and unlawful means," thereby referring to the possession of the company under Hunter, and ask that the parties be restored to the positions occupied before such possession by Hunter took place.

If Patrick was entitled to retain the agency, the conduct of Hunter in taking possession as plaintiff's agent was unauthorized and wholly illegal. If Hunter was the agent, duly appointed, and Patrick was not, then when this fact was brought to the knowledge of those in the Territory having charge of the mining property, the company, by its agent, Hunter, was entitled to the possession and control of the mine, and no one had the right to resist such authority. The resisting of the authority of the company and a refusal to yield up the mining property was unlawful. The moment the knowledge of the change of agents came to the employees, that moment their power to act under an agent who had been removed ceased, and they had no rights in or to the property or to the possession. Such would not be like the case of a lease, where the rights of landlord and tenant have to be considered, but it would be similar to a case where a man owns a piece of real estate and is in possession, and employs an agent, overseer or superintendent under himself. In such a case, the principal's power to discharge such overseer or agent could not be questioned, and if such agent or overseer refused to leave the premises, but persists in continuing to discharge the duties formerly devolving on him, he could be proceeded against as for trespass. If this could not be done, the employee could remain and discharge the duties of agent or overseer against the will of the principal and in violation of the rights of the principal, and the principal could not help himself. It would be the employee that would control the business and not the owner and possessor. This cannot be the law.

But it must be further kept in view that the object of such temporary injunction is not to decide whether possession was

obtained rightfully or wrongfully, but is merely to prevent any forcible and illegal attempts to gain or disturb the possession of property during litigation, and that its office is merely to keep matters in *statu quo* until the questions involved in the suit are decided. High on Inj. § 4.

It is a general doctrine that an agent holds his power only at the pleasure of the principal, and when the principal discharges an agent all power and authority of that agent ceases. But there are exceptions to the rule, as when the power of attorney is coupled with an interest, or is for a consideration, or as security to the agent. Such power of attorney is said to be coupled with an interest when the interest is an estate in the thing about which the agency is created, and not in the proceeds, and when the agent could act in his own name and not in the name of the company in carrying out the powers conferred. *Hunt* v. *Rousmanier*, 8 Wheat. 203 *et seq.*

In the case at bar the power of attorney is made at the same time that a contract is made by the company with Davis. This contract requires the making of the power of attorney. Defendants claim that Patrick has the right to continue to act as agent, and to retain control of the property, by virtue of these two papers together. Patrick is not a party to the contract and has no interest therein. He can claim no rights except under his power of attorney. Davis has, however, an interest in both the contract and in the power of attorney, as the latter was made merely to carry out the former. Under the ruling in *Hunt* v. *Rousmanier*, above referred to, his interest is not such as is contemplated by the rule as to irrevocability of power of attorney; that is, it is not an interest in the property, but only in the proceeds of the mining business. *Barr* v. *Schrader*, 32 Cal. 609. By the language of some other authorities it is such an interest as may be embraced under the exceptions to the rule, as it was made to protect the rights of Davis. Wharton's Agency, § 95 and note; Story on Agency, § 477.

If the power of attorney alone existed, it would not be pre-

tended that the removal of Patrick was not within the authority of the company; but the contract, so far as Davis is concerned, goes with it. And, assuming then that the power of attorney is a power coupled with an interest, if the contract, be valid, we pass to the consideration of the question whether this contract with Davis is valid and binding upon the company. It is simply a question as to whether the directors transcended their powers in making it.

Chief Justice MARSHALL, in delivering the opinion of the court in *Dartmouth College* v. *Woodward*, held that a corporation "being the mere creature of the law, it possesses only those powers which the charter of its creation confers upon it, either expressly or as incidental to its very existence." 4 Wheat. 636.

The same doctrine is again laid down by the Supreme Court of the United States, in almost the same language, in the case of *Perrine* v. *Chesapeake and Del. Canal Co.*, 9 How. 184. And this seems to be the settled doctrine. Angell & Ames on Corp. p. 86.

The power, then, to make the contract, if it existed, was either by the express words of the statute, or as incidental and necessary to the existence of the company. The contract is alleged to have gone beyond the powers of the directors in several respects. It is urged that the directors transcended their authority in borrowing money from said Davis in larger sums than specified in § 20 of the "articles of association," and in trying to bind the company by such a contract for the repayment thereof. It is answered, that although the amount is above that specified in § 20, yet that it was proper, as that section only had reference to borrowing on mortgage or debentures, and did not restrict the directors in borrowing without mortgage or debenture, and that the general authority given to the directors was equivalent to and covered the authority to borrow money. The general power is embraced in the closing lines of § 33 of the articles of association, which section, after detailing a number of powers specially granted, says: " And,

generally, to do all matters and things which are necessary or may be deemed expedient for carrying on the business of the company." This power is quite broad.

It is probably true that " in general an express authority is not indispensable to confer upon a corporation the right to borrow money," and " it is sufficient if it be implied as the usual and proper means to accomplish the purposes of the charter." Angell & Ames on Corp. § 257.

The difficulty, however, is to ascertain whether the contract is embraced in the implied powers of the corporation under this general clause. There is no express authority given to borrow money except on mortgage or debentures, under certain circumstances.

If the power to borrow money by the directors, without the consent of the stockholders is given under this general clause, it can only be limited by what the directors may deem "expedient for carrying on the business of the company." The power is conveyed if it be within the " letter and spirit of the act of incorporation." Angell & Ames on Corp. pp. 86–7; *Beatty* v. *Knowler*, 4 Pet. 162. Was it, therefore, within the "intention of the charter?" *Utica Ins. Co.* v. *Scott*, 19 John. 1.

The power to borrow money by such a corporation is a very important power and one that the corporate articles would likely make express provision for, but yet they might not do so. To a certain extent such provision was made in § 20 of the corporation act, which provides that:

Sec. 20. " The company may from time to time, with the sanction of a general meeting, borrow on mortgage or debentures, either transferable or to bearer, any sum or sums not exceeding £100,000, at such rate of interest as such meeting shall determine, and the board may borrow, without the sanction of a general meeting, on the like securities or on bills of exchange, any sum or sums not exceeding £10,000, at such rate as the board shall think fit."

In the " memorandum of association," we find that one of

the objects of the incorporation is: "*d*. To borrow money and issue bonds transferable or to bearer, secured on all or any of the property of the company." If we consider together the general clause referred to in §33, and also §20, and this specification "D" in the "memorandum of association," (and there are no other provisions bearing upon the point) the power to borrow money was within the "spirit of the act," and the "intention of the charter," but the power to borrow could only be exercised in a particular way and to specific amounts, and the amounts borrowed from Davis were above the amounts authorized, and were not borrowed by the consent of the general meeting. The manifest intention of all of these provisions, taken together, was to authorize the directors to borrow to the extent of £100,000 with the consent of the general meeting, and to the extent of £10,000 without such consent, and that, if necessary, such loans could be by the directors, secured by mortgage on the company's property or by debentures. It was never intended by the charter to give the directors unlimited power to involve the company by borrowing money. The granting of the power to be done to a definite amount and in a certain way was a prohibition upon the directors to pursue any other course. *Zottman* v. *San Francisco*, 20 Cal. 96; Angell & Ames on Corp. § 111.

It is further urged that the contract with Davis was *ultra vires* in another respect, that it placed beyond the reach of the corporation, for an indefinite time, the appointment and removal of its agents. The contract required that Patrick should be the agent, and that he could be removed by Davis but not by the company, until Davis had been repaid advanced money and certain ores had been delivered to him, and that Davis could remove Patrick at his pleasure, and appoint another agent for the company in Patrick's stead.

The articles of association say that the directors shall have power to appoint and remove agents, but the directors say that Davis may do these things and the directors shall not do so. The power to appoint agents and to remove unfaithful ones,

is a trust reposed alone in the directors, and they cannot contract that power away. If that power is to be surrendered by the directors, it can only be surrendered to the corporation, and not to a stranger. If the directors could transfer this power to a stranger then we might have the anomalous case of the formation of a corporation for mining purposes and the power assumed by the directors and without the consent of the corporation, to put the property of the corporation beyond the reach of the corporation, and to make the carrying out of the very object of the corporation an impossibility. The power to appoint and remove agents and managers rests with the company, and this power cannot be shifted or taken away by any contract made by the directors. *Neall* v. *Hill*, 16 Cal. 145; Grant on Corp. 243.

And, further, Patrick, it is said and admitted, broke the contract with Davis by failing to make the monthly reports required, and this, too, without objection from Davis. If, for this violation of duty, the company could not remove Patrick and thus repudiate the contract, then the contract was certainly one-sided. Davis reserved to himself the right to ignore the contract at pleasure, and to proceed against the company otherwise to secure payment of his debt. A corporation cannot be bound by any such contract of its directors. The contract is not mutual but is *ultra vires* as it is termed, beyond the authority of the directors, and is not binding upon the corporation. Fry on Specific Perf. 133; 2 Kent, 298–9.

And if it were true that such contract were binding upon the corporation, after recognition, yet there is no evidence to show such recognition, except such as was made by the directors. But as the directors had no power to make such a contract, their recognition of it after it was executed made it no more binding. There is no evidence that the matter was brought before a general meeting of the company.

There are two minor points urged, which we will notice. It is objected that the grounds of relief are alleged on information and belief instead of on direct and positive averment.

Under § 113 of the Practice Act, the allegation upon information and belief is sufficient.

It is likewise charged that the complaint does not set out the facts constituting the fraud charged. This may or may not be necessary, but the court will not now pass upon the point, as, aside from this, the complaint sets out enough facts to constitute a cause of action under § 254 of our Practice Act. *Curtis* v. *Sutter*, 15 Cal. 259.

Upon the whole case, therefore, we consider that the complaint was a sufficient statement of a case, and that the evidence before the court below was sufficient to warrant the conclusions that the company had the right to remove Patrick and to appoint another agent in his stead, and that the evidence was sufficient to show a well grounded fear that force would be used to wrest the possession from the duly appointed agent. Hence we conclude that the action of the court below in granting a temporary injunction was not improper, and its action is therefore approved. And, as was ordered by the judge below, this injunction is not to prevent defendants from instituting or prosecuting any proper legal proceedings to secure any just rights or claims which they or either of them may have against the plaintiff.

Judgment affirmed with costs.

SCHAEFFER, C. J., and EMERSON, J., concurred.