[S. F. No. 9072. In Bank.—October 9, 1919.]

SOPHIA TODD et al., Petitioners, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

[1] MANDAMUS — SUBSTITUTION OF ATTORNEYS — CONSIDERATION OF FACTS.—On an application for a writ of mandate to require the superior court to grant a motion for substitution of attorneys in a probate proceeding, letters, affidavits, and the consent of the petitioners, which were attached to and made a part of the motion, are to be considered, notwithstanding the motion was made on the ground that the appearance of the attorney of record was not authorized by the petitioners.

[2] ATTORNEY AND CLIENT—CHANGE OF ATTORNEY—RIGHT OF CLIENT. A client has a right to change his attorney at any time, except where the attorney has an interest in the subject matter of the suit.

[3] ID.—RIGHT TO DISCHARGE ATTORNEY.—The right of a client to discharge his attorney exists even though a contingent fee has been agreed upon, or an irrevocable power of attorney has been given, or the attorney has rendered valuable services under his employment or the client is indebted to him therefor, or for moneys advanced in the prosecution or defense of the action.

[4] ID.—POWER COUPLED WITH AN INTEREST—INTEREST IN THING ITSELF. The interest which can protect a power of attorney after the death of the person who creates it must be an interest in the thing itself.

[5] ID.—POWER COUPLED WITH AN INTEREST—WHAT CONSTITUTES.—A power coupled with an interest is a power which accompanies or is connected with an interest.

[6] ID.—IRREVOCABILITY OF POWER OF ATTORNEY—INTEREST IN SUBJECT MATTER.—To impart an irrevocable quality to a power of attorney in the absence of an express stipulation, and as the result of legal principles alone, there must coexist with the power an interest in the thing or estate to be disposed of or managed under the power.

[7] ID.—POWER OF ATTORNEY—WHEN IRREVOCABLE.—While, as a general rule, a power of attorney may at any time be revoked by the party conferring it, yet, where the power forms part of a contract, and is security for money, or for the performance of an act which is deemed valuable, it is generally made irrevocable in terms, or, if not-so, is deemed irrevocable in law.

[8] ID.—EXPRESS TERMS OF REVOCATION—WHEN IMMATERIAL.—Even though a power of attorney is made in terms irrevocable, that fact will not prevent revocation by the constituent where the power is not at the same time coupled with an interest or given as security for the payment of money, or for the performance of an act deemed of value.

[9] ID.—ESSENTIALS OF IRREVOCABLE POWER OF ATTORNEY.—In order to constitute an irrevocable power of attorney there must coexist with the power a beneficial interest in the subject thereof which is enforceable in the name of the attorney in fact and will survive the constituent; or the power must be given as security for the payment of a sum of money other than that which arises as compensation through the exercise of the power, or as security for the performance of some act of value.

[10] CONTRACT—REPUGNANT CLAUSES—CONSTRUCTION.—Where there is an inconsistency between two clauses of a written contract, the repugnancy must be reconciled so as to give effect to the repugnant clauses in keeping with the general intent or predominant purpose of the instrument.

[11] POWER OF ATTORNEY—COLLECTION OF LEGACIES—RIGHT OF REVOCATION.—A power of attorney given by legatees under a will is not coupled with an interest, so as to make it irrevocable, where the chief purpose of the legatees was to make an assignment in trust to the attorney in fact in order to facilitate the collection of the legacies, and to insure the reimbursement of the attorney for his outlays and compensation for his services, notwithstanding it was expressly recited in the power that it was the intention that it should be construed as a power of attorney coupled with an interest.

[12] ID.—EXTENT OF ASSIGNMENT—REIMBURSEMENTS AND COMPENSATION OF ATTORNEYS.—Under such a power of attorney, the assignment created a present interest in the legacies to the extent of reimbursements and compensation.

[13] ID.—NATURE OF INTEREST TO RENDER POWER IRREVOCABLE.—The interest which the attorney in fact must have in the subject of the

power in order to render the power irrevocable is such a beneficial interest in the thing itself, apart from the proceeds, that if the power were revoked he would be deprived of a substantial right.

[14] MANDAMUS — VALIDITY OF POWER OF ATTORNEY—IMMATERIAL QUESTION.—In a proceeding in *mandamus* to compel the granting of a motion for substitution of attorneys in a probate administration based on the revocation of a previous power of attorney given to another attorney at law, the contentions that the power was unconscionable and that it was procured through fraud and misrepresentation have no proper place in the determination of the proceeding.

PROCEEDING in Mandamus to compel the granting of a motion for substitution of attorneys in a probate proceeding. Writ granted.

The facts are stated in the opinion of the court.

T. E. K. Cormac and Wal J. Tuska for Petitioners.

Shelton & Levy for Respondents.

LAWLOR, J.—Application for a writ of mandate. On April 28, 1919, the petitioners herein filed an application for a writ of mandate to be directed against the respondents, the court having refused to grant a motion made by the petitioners for the substitution of attorneys in the matter of the estate of Christine Sharbach, deceased. On May 1, 1919, an alternative writ of mandate was issued by this court, and on June 2, 1919, the respondents interposed a demurrer to the petition on the ground that it did not state facts sufficient to constitute a cause of action for a writ of mandate. At the same time the respondents filed an answer to the petition. The matter was thereupon orally heard and submitted for decision.

Petitioners, Sophia Todd and Louise Weber, residents of England, were named as legatees in the will of Christine Sharbach, who died in San Francisco on November 21, 1917. On January 3, 1918, each of the petitioners executed a separate power of attorney to L. O. Thieme, of Chicago, Illinois, the powers being identical except as to the name of the constituent. That of Louise Weber reads as follows:

"Power of Attorney.

"Know all men by these presents: That I, Louise Weber, of 46 Carlton Street, West Hartlepool in the County of Durham, England, spinster, being of lawful age, do hereby make, constitute and appoint L. O. Thieme of Chicago, Illinois, to be my true and lawful attorney in fact with full power and authority to collect, receipt for, and sue for my distributive share, legacy or claim of any kind, nature or description, which I may have against or may now or at any future date be entitled to from the estate of Christine Sharbach, deceased, and to take possession of any personal property disbursed in kind by the personal representative of said estate; also to collect any policies of insurance, or death benefits in which I may be named as beneficiary; to take charge of and manage any real estate in which I may have an interest, to collect rents, pay taxes and to institute and conduct any proceedings for the partition or sale of any such real estate, and to institute, conduct or defend all suits at law or in equity which may concern the subject matter of this instrument, to retain and discharge counsel, to execute refunding bonds, statutory bonds, or bonds of any kind, nature or description, to enter my appearance and waive notice in the matter of any final accounting, to endorse checks and other papers of whatsoever kind, to compromise claims, to execute releases and to execute all other suitable instruments in writing, to carry into effect the various powers herein granted, and to do and perform all other acts as fully and effectually as I might do or perform if personally present, with full power to appoint and discharge substitutes, hereby revoking all powers of attorney heretofore executed by me.

"And for and in consideration of the sum of one dollar to me in hand paid, the receipt of which is hereby acknowledged, and in further consideration of services rendered and to be rendered and moneys to be advanced for court cost and other necessary expenses in this behalf by my said attorney in fact, I do hereby assign, transfer and set over unto my said attorney in fact all of the subject matter of this power of attorney, that is to say, of all property, real or personal, to which I may be entitled out of the estate of Christine Sharbach, deceased, or which arise out of the death of said deceased in any manner whatsoever, it being my intention that this power of attorney shall be construed as a power of

attorney, coupled with an interest in the subject matter thereof.

"After deducting the interest herein assigned, and his expenses and outlays in and about performing his duties, said attorney in fact shall remit the balance of the funds on hand to me thru his corresponding bank.

"In witness whereof I have hereunto set my hand and seal this third day of January, A. D. 1918."

On January 22, 1918, L. O. Thieme executed a power of substitution in favor of Eugene W. Levy, an attorney at law of San Francisco, as follows:

"Know all men by these presents: That I, the undersigned, L. O. Thieme, of the city of Chicago, State of Illinois, by virtue of the power and authority to me given in and by the letters of attorney dated January 3rd, 1918, of Sophia Todd and January 3rd, 1918, of Louise Weber do hereby substitute and appoint Eugene W. Levy attorney at law of the city of San Francisco, in the county of San Francisco, and state of California as the true and lawful attorney and substitute of myself and the said constituents named in the said letters of attorney, to do, execute and perform all and every act and thing requisite and necessary to be done, as fully to all intents and purposes as the said constituents or I myself could do if personally present, hereby ratifying and confirming all that the said attorney and substitute hereby made, shall do in the premises by virtue hereof and of the said letters of attorney."

Pursuant to the foregoing substitution, Mr. Levy, on January 30, 1918, filed a notice of appearance in the proceedings in the estate of Christine Sharbach, deceased, as attorney for the petitioners herein, the will of the deceased having been admitted to probate on December 21, 1917. The estate consists entirely of stocks and bonds, and there is no litigation in connection with these legacies, the administration of the estate being purely formal. On November 11, 1918, notice was served upon Mr. Levy that petitioners would, on November 18th, following, apply to the superior court of the city and county of San Francisco for an order substituting T. E. K. Cormac, Esquire, "as attorney for the said Sophia Todd and Louise Weber, respectively, in all proceedings in the matter of the estate of Christine Sharbach, deceased, in the place of the said Eugene W. Levy, Esquire." The motion,

which was heard and denied on April 21, 1919, after a number of continuances granted at the request of Mr. Levy, was "made on the ground that the appearance of the said Eugene W. Levy as attorney for the said Sophia Todd was unauthorized by the said Sophia Todd; and that the same is in furtherance of justice, and will be heard upon letters, affidavits, and consent of the said Sophia Todd, copies of which papers are hereto annexed, and other oral and documentary evidence." The notice of Louise Weber was in identical terms.

The letters and affidavits here referred to show that the petitioners on April 5, 1918, three months after executing the power of attorney to L. O. Thieme, and two months after Mr. Levy had filed an appearance, executed a power of attorney in favor of T. E. K. Cormac, Esquire, of San Francisco, "by which he is empowered to represent us in California, and elsewhere in America, for all purposes connected with estates of said decedent, and by which we *expressly canceled, withdrew and revoked the power of attorney we had formerly given to L. O. Thieme & Co. . . . and under which they or any substitutes or agents of theirs might be claiming to represent us in California or elsewhere.*" (Italics ours.)

Petitioners contend that under section 284 of the Code of Civil Procedure they " have the absolute right to change their attorney at any stage of the proceedings," and that the motion for substitution of attorneys made to the court below, supported by the letters and affidavits showing that the power of attorney held by Mr. Levy had been revoked by petitioners, should have been granted. Section 284 reads:

"The attorney in an action or special proceeding may be changed at any time before or after judgment or final determination, as follows:

"1. Upon consent of both client and attorney, filed with the clerk, or entered upon the minutes;

"2. Upon the order of the court, upon the application of either client or attorney, after notice from one to the other."

It is evident that the motion herein was made under subdivision 2.

It is urged on behalf of respondents that since the motion for substitution specified particularly that petitioners' present attorney was not authorized to represent them, they are confined to that ground here, and that if it be found that

the allegation was not well taken, the order denying the motion must be upheld and the writ denied. In other words, respondents argue that if it be found that Mr. Levy was at any time authorized to represent the petitioners, the writ must be denied without going into the question whether that authority has been revoked. In support of this contention respondents cite *Rundberg* v. *Belcher*, 118 Cal. 589, [50 Pac. 670]. In that case, application was made for a writ of mandate for the substitution of attorneys, which was denied on the ground that the petition did not state facts authorizing the granting of the writ, namely, it did not appear from the record that notice, as required by subdivision 2, section 284, of the Code of Civil Procedure, and section 1005, Id., had been given to the attorney there sought to be substituted out of the case. The court said: "While mandate will lie to compel judicial action, and in some instances even specific action (*Wood* v. *Strother*, 76 Cal. 545, [9 Am. St. Rep. 249, 18 Pac. 766]) and is an appropriate remedy in a proper case to obtain the relief here sought (*People* v. *Norton*, 16 Cal. 436), it may not be invoked to require a judicial officer to act in a particular way, except it appear by necessary legal deduction from the facts stated that the aggrieved party has been denied a right which it was the plain legal duty of the officer to grant, and without his proper discretion to refuse."

[1] While it is true, as we have pointed out, that the motion herein was made on the ground "that the appearance of the said Eugene W. Levy as the attorney" for the petitioners "was unauthorized" by them, it is also true that the motion was made "upon letters, affidavits, and consent" of the petitioners, which documents were attached to and made a part of the motion. These, therefore, became a part of the facts which, under the plain terms of the decision in *Rundberg* v. *Belcher, supra,* are to be considered by this court in making the "legal deduction" as to whether "the aggrieved party has been denied a right which it was the plain legal duty of the officer to grant, and without his proper discretion to refuse." As we have seen, the import of these documents is that the present attorney was not authorized by the petitioners to represent them in the probate proceedings, and, further, that the power of attorney under which he claimed authority to act had been revoked by them.

Respondents contend that the power of attorney which Mr. Levy holds as the substitute of Mr. Thieme is irrevocable; that it is made so by the language: "I do hereby assign, transfer, and set over unto my said attorney in fact all of the said subject matter of this power of attorney, that is to say, of all property, real or personal, to which I may be entitled out of the estate of Christine Sharbach, deceased, or which arise out of the death of said deceased in any manner whatsoever, it being my intention that this power of attorney shall be construed as a power of attorney coupled with an interest in the subject matter thereof."

[2] It is well settled that a client has a right to change his attorney at any time, except where the attorney has an interest in the subject matter of the suit. In 6 Corpus Juris, at page 677, it is said: [3] "This right of discharge exists even though a contingent fee has been agreed upon, or an irrevocable power of attorney has been given (*Carver* v. *United States,* 7 Ct. of Cl. 499; *People* v. *Norton,* 16 Cal. 436; *Crosby* v. *Hatch,* 155 Iowa, 312, 316, [135 N. W. 1079]), or the attorney has rendered valuable services under his employment (*Gage* v. *Atwater,* 136 Cal. 170, [68 Pac. 581]), or the client is indebted to him therefor, or for moneys advanced in the prosecution or defense of the action (*Gage* v. *Atwater, supra*). There is an exception, however, where the attorney has acquired an interest in the property. (*Louque* v. *Dejan,* 129 La. 519, [38 L. R. A. (N. S.) 389, 56 South. 427]; *Gulf etc.* v. *Miller,* 21 Tex. Civ. App. 609, [53 S. W. 709]; *Wylie* v. *Coxe,* 15 How. 415, [14 L. Ed. 753, see, also, Rose's U. S. Notes].)" It is said in 2 R. C. L. 957: "The right of a client to change his attorney at will is based on necessity in view both of the delicate and confidential nature of the relation between them, and of the evil engendered by friction or distrust. According to some decisions, an exception to the general rule as to the power of the client to discharge his attorney at will seems to exist where the power of the attorney is coupled with an interest in the cause of action. (*Louque* v. *Dejan,* 129 La. 519, [38 L. R. A. (N. S.) 389, 56 South. 427].)"

It becomes necessary, therefore, to consider what constitutes a power coupled with an interest and whether the interest here given is such as to render the power irrevocable. What

constitutes a power of attorney coupled with an interest has been considered in numerous decisions. The leading case on the subject, however, is the decision rendered by Chief Justice Marshall in *Hunt* v. *Rousmaniere,* 8 Wheat. 174, [5 L. Ed. 589, see, also, Rose's U. S. Notes]. In that case the owner of an interest in a certain vessel, then at sea, to secure a loan of money, executed to the lender contemporaneously with the loan a power of attorney authorizing him to sell the borrower's interest in the vessel, which power, by its terms, was to become void on payment of the loan. The borrower died before payment, and the question was presented whether his death operated to revoke the power. It was decided that the power was revoked by the death of the grantor. The general doctrine that a power must be exercised in the name of the principal, and does not survive his death, was held to be applicable. But the court, in the decision of the question, proceeded to consider the exception to the rule in cases where the power was coupled with an interest, and to define the meaning of that phrase. In a luminous statement the chief justice confined the scope of the exception to cases where, together with the power, there was vested in the donee an estate, right, or interest in the subject of the power, as distinguished from an interest in the proceeds of the power when exercised. In the former case he declared that the power would not be extinguished by the death of the creator of the power, because it attached to the estate of the donee in the subject thereof, and was capable of execution in his own name after the death of the principal, unlike cases where the power was unconnected with any interest in the thing itself, and the only interest was in the execution of the power. The learned chief justice said: "It becomes necessary to inquire, What is meant by the expression 'a power coupled with an interest'? Is it an interest in the subject on which the power is to be exercised? Or is it an interest in that which is produced by the exercise of the power? [4] We hold it to be clear, that the interest which can protect a power after the death of the person who creates it must be an interest in the thing itself. In other words, the power must be engrafted on an estate in the thing. The words themselves seem to import this meaning. [5] 'A power coupled with an interest' is a power which accompanies or is connected with an interest. The power and the interest are united in the same person. But if

we are to understand by the word 'interest' an interest in that which is to be produced by the exercise of the power, then they are never united. The power, to produce the interest, must be exercised, and by its exercise, is extinguished. The power ceases when the interest commences, and therefore, cannot, in accurate law language, be said be be 'coupled' with it.''

The doctrine thus enunciated has been adhered to in the following well-reasoned cases: *Barr* v. *Schroeder*, 32 Cal. 617; *Frink* v. *Roe*, 70 Cal. 296, [11 Pac. 820]; *Hammond* v. *Allen*, 11 Fed. Cas. 382; *Nicks' Heirs* v. *Rector*, 4 Ark. 251, 280; *Schauber* v. *Jackson*, 2 Wend. 1, 54; *Terwilliger* v. *Ontario*, 149 N. Y. 86, 92, [43 N. E. 432, 434]; *Frederick's Appeal*, 52 Pa. St. 338, 342, [91 Am. Dec. 162]; *Flagstaff Co.* v. *Patrick*, 2 Utah, 313; *Alworth* v. *Seymour*, 42 Minn. 526, [44 N. W. 1030]; *Louque* v. *Dejan*, 129 La. 519, [38 L. R. A. (N. S.) 389, 56 South. 427]; *Gulf etc.* v. *Miller*, 21 Tex. Civ. App. 609, [53 S. W. 709]; *Wylie* v. *Coxe*, 15 How. 415, [14 L. Ed. 753, see, also, Rose's U. S. Notes]; *Mansfield* v. *Mansfield*, 6 Conn. 559, [16 Am. Dec. 76]; *Hartley and Minor's Appeal*, 53 Pa. St. 212, [91 Am. Dec. 207].

In *Hartley and Minor's Appeal* a situation quite similar to the one in the present case was presented, the chief difference being that there the constituent did not assign her legacy to the attorneys in fact. In that case Hannah Gallion made to Hartley and Minor a power of attorney to collect and receive all money and property coming to her as heir of John Douglass, deceased, with power to convey her interest in the real estate of the decedent, ''the said Hartley and Minor to receive as compensation for their services herein one-half of the net proceeds of my interest in said estate which may be collected or received by them as my attorneys, after paying all costs and expenses, they to receive no further compensation for any services they may render or expenses they may incur or pay as my attorneys.'' Subsequently she gave another power of attorney to one Howland for the same purpose, and in it revoked that to Hartley and Minor. The latter, as attorneys of Hannah Gallion, petitioned the court for a citation to the administrator of Douglass' estate to settle his account. This was objected to because of the power of attorney to Howland. On this ground the court refused to grant the citation, and dismissed the petition. Hartley and Minor appealed from this decree. The appellate court said:

"There was no error committed by the court below in holding the power of attorney of Hannah Gallion to the appellants to be revocable. It was an ordinary agency, constituted by letter of attorney, to act for her to enforce a settlement of his accounts by the administrator of her father's estate, in which she was interested, and to collect any moneys or property that might belong, or be coming to her. For these services the attorneys were to have one-half of the net proceeds of what they might receive or recover for her. The plaintiffs in error suppose that this clause rendered the power irrevocable by their principal, under the idea that it was a power coupled with an interest. This was a mistake, as all the authorities show. [6] To impart an irrevocable quality to a power of attorney in the absence of an express stipulation, and as the result of legal principles alone, *there must coexist with the power an interest in the thing or estate to be disposed of or managed under the power.* An instance of frequent occurrence in practice may be given of the assignment of vessels at sea, with a power to sell for the benefit of the holder of the power, or of anybody else who may have advanced money and who it was agreed should be secured in that way. . . .

"In the case in hand the power and the interest could not coexist. The interest the appellants would have would be in the net proceeds collected under the power, and the exercise of the power to collect the proceeds would *ipso facto* extinguish it entirely, or so far as exercised. Hence the appellants' interest would properly begin when the power ended." (Italics ours.)

But there are powers which the constituent cannot revoke, although they do not come within Chief Justice Marshall's definition of a power coupled with an interest. This is clearly recognized by him in *Hunt* v. *Rousmaniere, supra.* After stating the general rule that a power may at any time be revoked by the party conferring it, he says: "But this general rule which results from the nature of the act has sustained some modification. [7] Where a letter of attorney forms part of a contract, and is security for money, or for the performance of an act which is deemed valuable, it is generally made irrevocable in terms, or, if not so, is deemed irrevocable in law."

An instance of a letter of attorney given as security for money is presented in *Norton* v. *Whitehead,* 84 Cal. 264, [18

Am. St. Rep. 172, 24 Pac. 154]. In that case a contractor borrowed from the plaintiff, his foreman on the work, various sums of money to enable him to carry on the contract. Afterward he executed to the plaintiff an assignment of all moneys due or to become due "for any work I may perform, the assignment to remain good and in full force until all notes due, or which are to become due . . . from me are paid." Later he gave plaintiff a power of attorney reciting that "whereas I am now desirous that all moneys that have become or may become due to me by reason of my performance of said contract shall be paid" to plaintiff, and giving him power to collect such moneys. These instruments were deposited with the other parties to the contract. The contractor died and the work was completed by his administrator. It was held that the plaintiff had such an interest in the moneys due on the contract as to prevent a revocation of the power on the contractor's death, and that the plaintiff was entitled to collect it as against the administrator.

[8] But it has been held that even though the power of attorney is made in terms irrevocable, that fact will not prevent revocation by the constituent, where the power is not at the same time coupled with an interest or given as security for the payment of money, or for the performance of an act deemed of value. (*Blackstone* v. *Buttermore*, 53 Pa. St. 266; *Bonny* v. *Smith*, 17 Ill. 531; *Kilpatrick* v. *Wiley*, 197 Mo. 123, [95 S. W. 213]; *Martin* v. *Lambkin*, 188 Ill. App. 431; *McKellop* v. *Devitz*, 42 Okl. 220, [52 L. R. A. (N. S.) 255, 140 Pac. 1161]; 6 C. J. 677.) In *Blackstone* v. *Buttermore, supra,* it was said: "A mere power, like a will, is in its very nature revocable when it concerns the interest of the principal alone, and in such case even an express declaration of irrevocability will not prevent revocation. An interest in the proceeds to arise as mere compensation for service of executing the power will not make the power irrevocable."

[9] It is well settled, therefore, that in order to constitute an irrevocable power of attorney there must coexist with the power a beneficial interest in the subject thereof which is enforceable in the name of the attorney in fact and will survive the constituent; or the power must be given as security for the payment of a sum of money other than that which arises as compensation through the exercise of the power, or as security for the performance of some act of value.

It now remains for us to examine in the light of the foregoing authorities the power of attorney in the instant case, and to determine whether or not it is coupled with such an interest, or given as security, either for the payment of money or the performance of an act, so as to make it irrevocable. As we have seen, the power of attorney in this case forms a part of a contract which in express terms purports to assign to the attorney in fact all of the petitioners' interest in the estate, and at the same time expressly stating that it is the intention of the constituents that it shall be a power of attorney coupled with an interest. The letter then goes on to say: "After deducting the interest herein assigned, and his expenses and outlays in and about performing his duties, said attorney in fact shall remit the balance of the funds on hand to me through his corresponding bank."

Respondents in their answer on this point have this to say: "There is an inconsistency between this clause and the preceding assignment of the entire interest of the legatee, because if such assigned interest were deducted, there would be nothing left to remit. If the two clauses were deemed irreconcilable, the instrument would be interpreted most strongly against the petitioner, the promisor (Civ. Code, sec. 1654). Consequently the assignment would be upheld. The inconsistency cannot be permitted to defeat the plain terms of assignment and the paramount provision of the instrument.

"But the inconsistency is apparent and not real. When aided by the settled rule of construction that repugnancy must be reconciled so as to give effect to the repugnant clauses, subordinate to the general intent and purpose (Civ. Code, sec. 1653), the meaning of the power of attorney becomes plain. The predominant purpose to create a power coupled with an interest and thus an irrevocable agency is expressly declared. To insure this result the entire interest is transferred. But the assignment is not intended to be absolute so as to divest the petitioner of all further claim to her legacy. The transfer is really one in trust pursuant to which the attorney in fact takes the legal title with a corresponding duty to account. He himself has a beneficial interest sufficient at least to pay for his services and outlays."

That there is an inconsistency between the two clauses is clear. [10] Nor do we question respondents' statement of the rule of construction that under such circumstances the re-

pugnancy must be reconciled so as to give effect to the repugnant clauses in keeping with the general intent or predominant purpose of the instrument. But we cannot agree with respondents in their statement of what is the "predominant purpose" or "paramount provision" of the instrument. [11] It is clear to us that the chief purpose of the constituents here was not, as respondents contend, "to create a power coupled with an interest and thus an irrevocable agency," but rather to make an assignment in trust to the attorney in fact in order to facilitate the collection of the legacies, and to insure the reimbursement of the attorney in fact for his outlays, and for compensation for his services. Now, since the reimbursements and compensation were to be taken from the legacies, it may be conceded that they are to that extent an interest in the subject of the power and that the interest arose when the assignment was made—that is to say, the power and the interest concurred. [12] The assignment, in other words, created a present interest in the legacies, but only in the sense we have indicated—to the extent of reimbursements and compensation. But this does not render the power irrevocable. The mere expression, "a power coupled with an interest," does not necessarily render the power irrevocable. [13] It is plain from the foregoing authorities that the interest which the attorney in fact must have in the subject of the power in order to render the power irrevocable is such a beneficial interest in the thing itself, apart from the proceeds that if the power were revoked he would be deprived of a substantial right. In other words, the relation of the attorney in fact to the subject matter must be such that a revocation of the power would be inequitable. Such is not the case here. The interest in the proceeds of what may be collected is not, strictly speaking, a beneficial interest in the legacies. The interest is nothing more than an assurance that the attorney in fact will be reimbursed and compensated out of the legacies when collected. A revocation of the power would in no way deprive the attorney in fact of any right, for the reason that he is entitled to be reimbursed for any sums expended by him and to be compensated out of the legacies for any services rendered under the power up to the time of revocation. Nor can the creation of a trust, which has placed the bare legal title in the attorney in fact, with a corresponding duty to account, be considered upon any theory as conferring upon the attorney in

fact such a beneficial interest as to render the power irrevocable. Fairly considered, the contract herein creates a trust with a corresponding duty to account. It has no meaning other than this. The case would be quite different if, in addition to providing for reimbursements and compensation, the contract vested in the attorney in fact a definite share in the ownership of the legacies. In such an event, the power would be "engrafted upon an estate in the thing," and under such a contract to permit the revocation of the power and substitute the attorney in fact out of the case would be to prevent him from exercising the right of property.

[14] Petitioners urge that the power of attorney is unconscionable and should not, therefore, be recognized in equity, since it professes to assign all of petitioners' legacy without consideration. It is likewise contended that the power of attorney was secured through fraud and misrepresentation. It is sufficient to say that such questions have no proper place in the determination of this proceeding. The order of substitution should have been made.

Let a peremptory writ of mandate issue.

Shaw, J., Olney, J., Lennon, J., Wilbur, J., Melvin, J., and Angellotti, C. J., concurred.