[Civ. No. 11041.   First Appellate District, Division Two.—May 11,
1939.]

HAZEL E. MOORHEAD, as Executrix, etc., Appellant,
v. FRANK H. SHAFER, Respondent.

Otto G. Foelker and J. H. McKnight for Appellant.

Clark, Nichols & Eltse for Respondent.

STURTEVANT, J.—As executrix of the estate of her mother, the plaintiff commenced this action in declaratory and affirmative relief predicated upon a written agreement executed by Frank H. Shafer and Lillie May Shafer. The agreement was executed April 1, 1933. Lillie May Shafer died August 17, 1936, and the plaintiff was appointed executrix of her estate. The plaintiff contends that under the terms of the said written agreement defendant agreed to pay to his wife, or the estate of his wife, the sum of $32.08 per month until the sum of $5,500 had been paid. The trial court made findings to the effect that by the terms of said written agreement all promises by the defendant were solely to pay $32.08 per month, the interest due on a certain promissory note, to his wife, the decedent, and that such payments had been made. From the judgment based on those findings the plaintiff has appealed.

On or before April 1, 1933, marital troubles arose between Mr. and Mrs. Shafer and she was about to apply for a divorce. They had accumulated and were possessed of properties including cash on hand, promissory notes secured by deeds of trust, and a parcel of real estate known as their home. On that date they executed and delivered deeds and assignments. They also executed a formal written agreement. Omitting descriptions not necessary to an understanding of the controversy that instrument provided as follows: "This Agreement made and entered into this 1st day of April, 1933, by and between Frank Shafer, party of the first part, and Lillie May Shafer, his wife, party of the second part, both of Oakland, California. Witnesseth:

"That said parties are husband and wife, and unhappy differences have arisen between them and they have been living separate and apart from each other for a period of several months last past, and there are no children, the issue of said marriage, and said parties are mutually desirous of equitably settling and adjusting all property rights between them, and for the better support and maintenance of each of said parties and so that each of the parties hereto shall hence-

forth have no claim or demand against the other, either as to the present property of the respective parties, or as to any property which they may hereafter acquire.

"Now, therefore, in consideration of the mutual promises and agreement herein set forth, it is mutually agreed by and between the parties hereto, as follows:

"1. That said first party gives to said second party the sum of $1700.00 in cash, the receipt whereof is hereby acknowledged.

"2. It is further agreed by and between the parties hereto *that said first party will pay, or cause to be paid to said second party the sum of $32.08 per month,* said payment to be secured by that certain $5500.00 promissory note, secured by a deed of trust, said note and deed of trust dated, Oakland, California, December 5th, 1929, executed by Addie M. Hutchinson and C. C. Hutchinson, her husband, . . . Said second party assigns all her right, title and interest in and to said $5500.00 promissory note and deed of trust to secure the same, *saving and excepting interest payments thereon, as provided by said note and terms of this agreement, in the sum of $32.08 per month.* . . .

"3. It is further agreed by and between the parties hereto that said first party shall direct the makers of said $5500.00 note towit: Addie M. Hutchinson and C. C. Hutchinson, *to pay directly to said second party, or order, instead of the said first party the monthly interest payments therein provided to be paid,* and in the event that said payments are not so made said first party promises to pay to said second party the sum of $32.08 per month and to continue said payments until said first party has paid to said second party *a sum equal to the total amount (of interest) due by the terms of said note and deed of trust.* Nothing herein shall be construed by said first party, his heirs or assigns, in relieving him or them from paying to said second party *a sum equal to the total interest payments provided in said note and deed of trust.* In the event that there should be a default in said note and deed of trust, or default in the payments to said party by said first party, or non-payment of said $32.08 per month to said second party said first party hereby promises to pay to said second party *the total sum of interest payments provided by said note and deed of trust.*"
(Note: The words "of interest" inserted by us.)

"4. It is further agreed by and between the parties hereto that said first party has assigned to said second party all his right, title and interest in and to that certain $3000.00 promissory note secured by deed of trust said note and deed of trust dated, Berkeley, California, May 5th, 1930, executed by C. O. Dull, Gretchen E. Dull,. J. L. Bredchoft and Hannah D. Bredchoft, . . .

"5. It is further agreed by and between the parties hereto that said second party shall permit said first party to collect and have for his own use and benefit the interest provided to be paid in said $3000.00 promissory note executed by C. O. Dull, Gretchen E. Dull, J. L. Bredchoft and Hannah D. Bredchoft so long as he shall live, or until the maturity of said note, except on failure to pay second party said $32.08 per month. *In that event interest payments on said note shall be paid by maker direct to second party.* Nothing herein shall be construed by said first party, his heirs or assigns, as ownership in and to the principal sum of said promissory note, and in the event of default in the terms of said promissory note and/or said deed of trust said second party shall exercise all the right of ownership and said first party, his heirs and assigns, hereby waives any and all claim in and to said principal sum of said promissory note, and in the event that said second party shall exercise ownership by declaring default, according to the terms of said note and deed of trust, then and in that event all interest payments to said first party, his heirs and assigns, shall forthwith cease.

"6. It is further agreed by and between said parties that said first party shall by deed transfer all his right, title and interest in and to the following described property, including all the contents of the house thereon, said property situate at 5116 Grove Street, in the City of Oakland, County of Alameda, State of California, . . .

"8. It is further agreed by and between the parties hereto, as follows, towit:

"(a) That said second party hereby waives all her right, title and interest in and to that certain Studebaker automobile now in the possession of said first party.

"(b) Said second party hereby waives all her right, title and interest in and to the following described promissory

notes and deeds of trust securing the payments of said promissory notes:

"1. That certain $2500.00 promissory note secured by deed of trust, said note dated, Berkeley, California, January 25th 1932, executed by American Trust Company, a corporation, Trustee under the Last Will and Testament of Anna C. Thompson, deceased, by W. S. Wood, Vice-President and W. S. Schenck, Assistant Secretary, said note bearing interest at the rate of 7% per annum, interest payable monthly in advance. . . .

"2. That certain $3000.00 promissory note secured by deed of trust, said note and deed of trust dated, Berkeley, California, April 6th, 1929, executed by E. C. Thompson and Isa D. Thompson, said note bearing interest at the rate of 7% per annum, interest payable monthly in advance, and said deed of trust of even date, between E. C. Thompson and Isa D. Thompson, his wife, Trustor, wherein Frank H. Shafer is called the lender and American Trust Company, a corporation, trustee, conveying the following described property. . . .

"3. That certain $3000.00 promissory note secured by deed of trust, said note dated Berkeley, California, July 30th, 1928, executed by Zula May Wood, and said note bearing interest at the rate of 7% per annum, interest payable monthly in advance, . . .

"9. It is further stipulated by and between the parties hereto that said assignments are evidenced by separate documents executed and delivered by the said parties and designated as 'Assignment of Note and Deed of Trust'.

"10. *It is further understood and agreed by and between the parties hereto that* neither of said parties hereto shall have any claim or demand upon the other, whether for support, maintenance or alimony, or to claim or receive as an heir at law, or otherwise, any of the property of the other party hereto, or to claim or receive family allowance from, or to administer upon the estate of the other, and *this document is the full measure of the property rights of the parties hereto* as against each other, and in the event a divorce should be filed by either of the parties hereto, it is hereby stipulated by and between the parties hereto that the Court shall take this contract as the measure of the property rights of the parties

hereto, and nothing herein shall be construed, or the fact that a property settlement has been made between said parties, as giving the other encouragement or basis for a divorce. . . . '' (Emphasis ours.)

In support of her contention the plaintiff stresses and relies on the covenants contained in paragraph three. Neither that paragraph nor any other part of the agreement supports her. In particular that paragraph does not support her for several separate and distinct reasons. In the first place the first part of said paragraph is addressed to the contingency of the refusal or neglect of the Hutchinsons to comply with the directions of Mr. Shafer to make payments of interest directly to Mrs. Shafer. But the Hutchinsons never refused to make said payments directly to her and the contingency never arose. In the next place the covenant as written was to pay ''a sum equal to the total amount due by the terms of said note and deed of trust''. The principal stated in the note was $5,500. The note was payable in one year. The interest was fixed at 7 per cent. The amount was therefore $5,885. But even the plaintiff disclaimed asking that sum. She thereby admitted that said clause was ambiguous. Indeed it was, because if it had any such meaning why did Mrs. Shafer assign her interest in the note to Mr. Shafer? Such act was worse than an idle act. But, taking the agreement up by its four corners, it is obvious it had no such meaning as will hereinafter appear. Finally, there was undoubtedly an error in writing said covenant. Clearly the parties did not mean to enhance ten-fold the obligation of Mr. Shafer because the Hutchinsons refused to make their payments to Mrs. Shafer instead of to Mr. Shafer. However, in writing said paragraph they neglected, in stating the amount of the obligation of Mr. Shafer, to use the same words repeatedly employed by them. They wrote ''total amount due by the terms of said note and deed of trust'', whereas they intended to write ''total amount of interest due by the terms of said note and deed of trust'', the expression used in other parts of their agreement. If such was the intention of the parties, it is our clear duty to so construe the instrument. (Civ. Code, secs. 1648 and 1652; 12 Am. Jur. 775; *Coast Counties Real Estate etc. Co.* v. *Monterey County W. W.*, 96 Cal. App. 269, 278 [274 Pac. 415].) The

question presented for determination in such cases being "What is the paramount purpose or paramount provision of the instrument?" (*Todd* v. *Superior Court of San Francisco*, 181 Cal. 406, 418, 419 [184 Pac. 684, 7 A. L. R. 938].) That question should be answered, if possible, by an examination and comparison of the several covenants contained in the agreement. (Civ. Code, sec. 1639.) We will turn then to the various covenants contained in the agreement for additional light.

In no place did Mr. Shafer agree generally and by unlimited language to pay money in any amount except in paragraph one he agreed to pay $1700 in cash. That paragraph is in no manner involved. Mrs. Shafer assigned all of her interest in the Hutchinson loan " . . . saving and excepting interest payments thereon, as provided by said note and terms of this agreement in the sum of $32.08 per month." (Par. 2.) That sum out of that fund Mr. Shafer agreed he would direct the Hutchinsons to pay directly to Mrs. Shafer. (Par. 3.) If they did not do so he agreed to pay (ib.). "Nothing herein shall be construed . . . in relieving him . . . from paying a sum equal to the total interest payments provided in said note and deed of trust" (ib.). If there should be a default by the Hutchinsons, Mr. Shafer agreed to pay Mrs. Shafer " . . . the total sum of interest payments provided by said note and deed of trust (ib.). The first of the covenants recited in this paragraph immediately preceded and all others recited in this paragraph immediately followed the covenant we have written "a sum equal to the total amount (of interest) due by the terms of said note and deed of trust". It follows that each promise was to pay out of the same fund in the same *quantum*. That was the "paramount purpose" of the agreement and the trial court did not err in so construing it.

Moreover, the parties so construed this agreement. Said instalments were paid down to the date of the termination of the 1929 note and were, so far as the record discloses, accepted without complaint. When the Hutchinson note was about to outlaw Mr. Shafer could have declared a default and terminated that loan and also his obligations under the agreement before us because he had then fully performed every covenant contained therein. The parties did not so construe

their agreement. Mr. Shafer renewed the loan December 2, 1935, as the lender in his own name but continued the payments as though the note of 1929 was still in force. He so continued down to the date of the death of Mrs. Shafer.

After the death of Mrs. Shafer he made no payment to this plaintiff. He was not bound to do so. No covenant contained in the agreement called upon him to do so.

All matters, except making the payments provided in said agreement, were clearly intended to be executed covenants. All provisions were for a division of the properties and the support of each spouse. Each note, and the trust deed securing its payment, was unconditionally assigned to one spouse. From that instant either spouse could have served notice on the maker of any note held by such spouse and caused a sale in the event of a default. Furthermore, each spouse could have assigned any one of his or her notes and trust deeds. No covenant to the contrary was inserted. If Mrs. Shafer exercised her right and declared a default under the Dull loan, all rights of Mr. Shafer to collect interest thereon would *ipso facto* terminate. (Par. 5.) If Mr. Shafer did the same thing under the Hutchinson loan, the note dated December 5, 1929, he became liable to Mrs. Shafer to pay " . . . the total sum of interest payments provided by said note and deed of trust". (Par. 3.) Mr. Shafer's rights to participate in the Dull loan were limited to him and did not extend to his " . . . heirs and assigns". (Par. 5.) Mrs. Shafer's heirs and assigns were not expressly bound by any covenant nor did any covenant expressly run in their favor. The sole language used, except as hereinabove noted, was to the effect that all payments by Mr. Shafer would be made to Mrs. Shafer.

In the preamble it is said the parties were "mutually desirous of equitably settling and adjusting all property rights between them, and for the better support and maintenance of each of said parties hereto shall henceforth have no claim or demand against the other . . . ". That recital is inconsistent with and cannot be reconciled with the claim of the plaintiff. However, the conclusions stated above are in entire accord with the recital contained in said preamble. The last paragraph, number ten, is also helpful wherein it provides: "It is understood and agreed by and between the

parties hereto that . . . this document is the full measure of the property rights of the parties hereto . . . "

The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.