FRED L. NUNNERY et al. v. CLAUDE E. NUNNERY et al. W. H. FISHER, Petitioner, Appellant and Appellee, FRED L. NUNNERY et al., Respondents, Appellee and Appellants.—335 S. W. (2d) 737.

Western Section.  May 20, 1959.

Certiorari Denied by Supreme Court July 27, 1959.

Davis & Davis, Memphis, for petitioner.

Robert L. McKnight, Erich W. Merrill, Memphis, for respondents.

AVERY, P. J. (W. S.)  The question to be determined by this Court, in this cause, is whether or not W. H. Fisher, counsel for original complainants, is entitled to any fees for his services rendered in this cause in addition to a fee of $250 paid to him in accord with the Decree so ordering, entered in this cause on March 27, 1950, and if he is entitled to any additional fee, the amount thereof.

The record indicates that the original bill was prepared in March, 1949 but was not filed in the Court until December, 1949. It seems unnecessary to a proper determination of the rights of the parties to particularize the allegations in the original bill. Suffice it to say that Fred L. Nunnery, W. J. Nunnery and Charles E. Nunnery, together with their sister, Lela Orndorff, being four of the five children of Lucius Nunnery, deceased, procured the services of W. H. Fisher, an Attorney at Law of Memphis, Tennessee, and filed the original bill against their brother, Claude E. Nunnery, the only other child of Lucius Nunnery, deceased, and W. J. Nunnery, Jr. and Margaret N. Warde, the only children then in being of W. J. Nunnery, Charles H. Orndorff, Jr., the only child then in being of complainant, Lela Orndorff, Charles Clifford Nunnery, a son and only child then in being of complainant, Charles E. Nunnery, and Fred L. Nunnery, Jr., the only child then in being of complainant, Fred L. Nunnery.

The bill was filed for the purpose of having the rights of the five surviving children and only heirs at law of said Lucius Nunnery, deceased, who died April 4, 1947, testate, and his wife, Lizzie Louise Nunnery, who died in June 1948, declared, which necessitated a construction of the Will of Lucius Nunnery, and the real estate of which each of them died seized and possessed, either sold for partition or partitioned in kind.

The entire record in the cause is not before us. Only that part of it necessary to a decision of the question immediately involved has been incorporated in the transcript of the record and which was done by direction of counsel for W. H. Fisher and counsel for the Nunnery group, by designating the part of the record to be filed

in this cause in accord with provisions of T. C. A. secs. 27-323, 27-324.

The Will in question, by Item 3 thereof, expressly bequeathed all of the real estate of the Testator, Lucius Nunnery, to his wife, Lizzie Louise Nunnery, only during her natural life. By Item 4 thereof, on the death of Lizzie Louise Nunnery, the Will bequeathed—

" * * * to Lela Orndorff, my daughter, Charles Edward Nunnery, my son, Fred L. Nunnery, my son, and W. J. Nunnery, my son, each a one-fifth undivided interest in fee simple"

in and to all of his real estate.

By Item 5, the Will bequeathed the remaining one-fifth undivided interest in all of the real estate to complainant, Fred L. Nunnery, as Trustee for testator's son, Claude E. Nunnery, with full power vested in the Trustee to manage and control that particular one-fifth undivided interest and directed him to pay the net proceeds to his son, Claude E. Nunnery, monthly or quarterly, as follows:

" * * * upon the death of the said Claude E. Nunnery, my son, the trust shall terminate; and the said one-fifth, undivided interest in all of my real estate, being the trust estate, hereby created, I devise to Lela Orndorff, Charles Edward Nunnery, Fred L. Nunnery and W. J. Nunnery, or the descendants of such, if any, that may have died, in fee simple."

In the bill, as originally filed, all of the real estate alleged to have been owned and located in Shelby County, Tennessee, at the time of the death of the testator is described as Tracts 1, 2, 3, 4, 5 and 6, apparently with the

descriptions set forth in the deeds. Reference is made to the several deeds by which the Testator became seized of the respective tracts or parcels of real estate; and reference is made to certain irregularities in the acknowledgements to some of the deeds, which the bill alleges are cured by statute of limitations with respect to acknowledgments of record for a longer period than 20 years; and there were certain restrictions as to buildings or improvements on some of said parcels, but which had expired by virtue of a 10-year limitation expressly recited in the original deed.

Tracts 1, 2 and 3, as described in said original bill, appear to be city lots. Tract 4 is shown to contain 105.37 acres. Tract 5 contains 169.50 acres, and Tract 6 contains 287 acres. These last two tracts together contain what is referred to as the "Ensley Bottoms tract".

The prayer of the bill is:

(1) For process;

(2) For appointment of Guardian ad Litem to represent minor defendants;

(3) "That the Court determine and declare the right, title, and estates, legal and equitable, of each and all of the parties, and those in esse, and those in posse as well; that the property involved and described be sold by decree of the court for the purpose of division and partition of the proceeds, net after the payment of costs, etc., among the parties in accordance with their respective interests, legal or equitable."

(4) An alternative prayer for partition in kind, in the event the parties may be mistaken in their rights to have the property sold for partition;

(5) For necessary references to Master; and

(6) For general relief.

The bill is sworn to by the complainant, Fred L. Nunnery.

At some stage of the proceedings it seems that offers were made to purchase Lots 1, 2 and 3 without an actual public sale and that the cause proceeded to proof and Lots 1, 2 and 3 were sold, by Decree of the Court, for $6,900, which was paid into the Court, and before us in this record is the decree of confirmation of that sale on March 27, 1950.

A member of this Court, His Honor L. D. Bejach, was at that time one of the Chancellors in the Chancery Court of Shelby County. The case was then heard before him and he entered that decree of sale, together with decree confirming the sale of these three lots, divesting and vesting title thereto and therein, determining the rights and interests of all the parties in and to all of the real estate described in the original bill. Among the pertinent provisions of that Decree, as relates to the matter now before us, are the following:

"All the parties interested in this property are parties to the bill, either as complainants or defendants, and those who may be born hereafter are represented by the existing contingent remaindermen who properly represent them as a class. All the contingent remaindermen now in esse are parties defendant.

"The bill seeks a declaration of the rights and titles of the parties, and a construction of the will, and for a sale of Tracts 1, 2, & 3, at this time, and a

retention of the cause in court for the sale of the other tracts at some future date.

"The Court holds that Fred L. Nunnery, Charles E. Nunnery, W. J. Nunnery, and Lela Orndorff, are each the owners of an undivided one-fifth interest in the property; and Fred L. Nunnery holds as trustee the legal title to the other one-fifth undivided interest for the benefit of Claude E. Nunnery during said beneficiary's life; there is a contingent interest in this one-fifth, in that when Claude E. Nunnery dies, the property will pass in one-fourth undivided shares to Fred L. Nunnery, Charles E. Nunnery, W. J. Nunnery, and Lela Orndorff, if they are living at the time of Claude E. Nunnery's death; but if any one of said persons dies before the death of Claude E. Nunnery, then the descendants of that person shall take the share designated for that person, the court hereby interpreting the word descendants to mean the lineal heirs of that person so dying prior to Claude E. Nunnery's death. Such descendants or heirs cannot now be known, and cannot be known until and unless the contingency happens, and herein is the contingency; all existing parties to that contingency are before the court, and the present children, or present descendants in esse represent those in posse, and this decree binds all whether in esse, or in posse.

"The Court holds that under the powers granted to Fred L. Nunnery, as Trustee, he has the power and authority to sell the property involved in the trust with the approval of the Court, and the Court, having heard the testimony in regard to the property, does approve the sales proposed by said trustee, as

hereinafter set out. The bill also sought to sell for partition, or division, and the Court finds from the proof that the property is of such kind and character that it cannot be partitioned in kind among the parties in interest, and that it would manifestly be to the advantage of all the parties that same be sold for division rather than partitioned in kind, and the Court finds that complainants are entitled to a sale for division. On both bases the Court orders a sale of the property, and now approves the private sales hereinafter set out, finding from the proof that each sale represents the fair market value of the property involved therein, and that such private sales are to the best interest of all the parties.''

The Decree then makes proper reference with respect to taxes, directs the Clerk and Master to pay them, and provides for the distribution of the net funds from said sale.

In arriving at the amount of the net funds, the Decree fixes certain fees, specifically providing as follows:

''From the funds the Clerk will pay all the costs of this cause, including the costs of the deeds, and including a fee of $250.00 allowed by the Court as a reasonable fee to W. H. Fisher, solicitor for complainants for his services to-date, and a fee of $100.00 allowed by the Court as a reasonable fee to Jack Petree, a guardian ad litem for the minor defendants, for his services to-date. The remainder of the funds the Clerk will distribute one-fifth each to Fred L. Nunnery, W. J. Nunnery, Chas. E. Nunnery, and Lela Orndorff. The remaining one-fifth of the funds, being that belonging to the said trust estate,

shall be held by the Clerk until such time as Fred L. Nunnery, the Trustee, shall apply for and obtain the approval of the Court on investments of such funds, which are to be held subject to the trust estate.''

The Decree then closes with the following provision:

''The Cause is retained in Court for this purpose, and also for the purpose of further proceedings in connection with the Tracts 3, 4 & 5. (Evidently 5 and 6, as described in original bill, were considered by the Court to be one tract, since they are referred to as the ''Ensley Bottoms tract''. It may be that is a typographical error and 4, 5 and 6 was meant, since lot 3 was sold as hereinbefore shown.) The present guardian ad litem, Jack Petree, Esq. will continue to represent the minor defendants.'' (Parenthesis inclusion inserted.)

Thereafter in July of 1951, there was an Order of the Chancellor, authorizing Fred L. Nunnery, as Trustee for Claude E. Nunnery, to invest the funds then in Court belonging to his ward.

The record shows that after the sale of Lots 1, 2 and 3 had been accomplished and closed, the complainants decided to partition Tract 4 by deed among themselves. They discussed this matter with Mr. Fisher in 1951, giving him the information about how they desired the tract to be divided; that they wished it divided into four parts, at which time Claude E. Nunnery was in a mental institution and they accordingly executed deeds, as prepared by Mr. Fisher, fixing the value of the property as shown by the appraisers thereof at the time the bill was filed and deeds were executed accordingly.

In the record before us, nothing else appears to have been done until October 11, 1957, insofar as any further court proceedings were concerned. On that date there was an Order of the present Chancellor, Honorable Ceylon B, Frazer, Division II of the Chancery Court of Shelby County, in the following words:

"On motion of complainants, it is ordered that Robert L. McKnight and Erich W. Merrill are hereby made solicitors of record for complainants in this cause; such action being without prejudice to any rights that W. H. Fisher, solicitor, may have."

This Order was OKed by the solicitors so substituted, Robert L. McKnight and Erich W. Merrill, on behalf of complainants, and was OKed by Wils Davis as solicitor for the attorney, W. H. Fisher, who filed the original bill. The Order was based upon affidavit filed in the Court on that same day, October 11, 1957, by Fred L. Nunnery, which is as follows:

"I, Fred L. Nunnery, having been duly sworn, do state that the complainants in this cause, William J. Nunnery, Charles E. Nunnery, Lela Orndorff, and myself, Fred L. Nunnery, have discharged W. H. Fisher as our solicitor; and that we have employed Robert L. McKnight, Esq. and Erich W. Merrill as our solicitors in this cause."

On October 25, 1957, there was an Order entered by the Chancellor permitting the original complainants to file a Supplemental Bill, in which they were represented by said McKnight and Merrill. This Supplemental Bill reiterates the provisions contained in the original bill and it deals only with Tracts 5 and 6 described in the original

bill, both of which are known as the Ensley Bottoms tracts. Among the many provisions of the Supplemental Bill, which are stated beginning with Section V thereof, it is shown that the original complainants, the four children of Lucius Nunnery, along with Fred L. Nunnery, as Trustee for Claude E. Nunnery, who had been theretofore confined in the Western State Hospital, had entered into a contract to sell these Tracts No. 5 and No. 6 to the City of Memphis, to Shelby County, Tennessee, and to the Memphis & Shelby County Port Commission, for $150,000 cash; that the question of the title to these tracts had been submitted to the Mid-South Title Company for the purpose of having the title insured, which company had required certain procedure to be followed, after which it would be willing to insure the title.

In this Supplemental Bill, other children were named as parties who were not in being at the time the original bill was filed and all unborn heirs of these parties were also made defendants to that Supplemental Bill, and it prayed for confirmation of this contract of sale and divesture and vesture of the title accordingly. The Decree thereon is of considerable length and appears to have been entered May 20, 1958, makes all necessary reference to the former Decree, recites the fact that the Will of Lucius Nunnery had been construed in this same cause on March 27, 1950, and the rights of all the parties had been determined, but made no provision for the disposition of the proceeds of that sale.

On May 23, 1958, W. H. Fisher, original counsel for the complainants, filed a petition styled:

"Petition of W. H. Fisher for Attorney's Fee."

In that petition he sets forth in some particularity the manner of his employment, the work he had done in the cause, certain conferences he had had with his clients after the confirmation of the sale of Lots 1, 2 and 3; conversations he had had with his clients in 1955 and 1956 relative to the matter of the option contract for the Ensley Bottoms land; that in August or September of 1957 Fred L. Nunnery, who had been the principal contact between Mr. Fisher and the other parties at interest, informed him that the Mid-South Title Company was examining that title and thereafter brought to him the letter of the Mid-South Title Company setting forth the requirements necessary to its insurance of the title to the Ensley Bottoms land; that he had made a study of all of these requirements and was ready to prepare a supplemental bill in accordance therewith; that on September 23, 1957, he received a letter from Mr. Fred L. Nunnery, copy of which is filed as Exhibit "B" to the bill, requesting a conference with him to be had by Fred L. Nunnery and W. J. Nunnery, and advising that he could call them and they would arrange to meet at his office; that when this conference was had his clients gave him the information about the age, etc., of these children who had been born into the Nunnery and Orndorff families since the original bill was filed, some of whom were great grandchildren to the original testator; that there at that time his clients suggested that he do this work for a fee of $250. His petition alleges that he informed them that so far as his services were concerned, his fee had already been earned, and that further fee should be either fixed by the Court or a percentage of the $150,000 consideration be agreed upon; that at this stage of the conversa-

tion his clients demanded all the papers that he had concerning the matter, left his office and said they would get other counsel to handle the matter. His petition prayed that his fee be fixed in whatever sum the Court might deem proper and paid out of the funds in the hands of the Clerk and Master.

That petition was answered by the same counsel who had filed the Supplemental Bill and in that petition they denied that Mr. Fisher was entitled to have any fee whatever, averring that there had been an original agreement for fee of $250 for his services in the whole case, which fee had been paid to him after the sale of Lots 1, 2, and 3; that the Mid-South Title Company had demanded certain additional procedure to be had before they would insure the title; that Mr. Fisher had not been reemployed after the sale of Lots 1, 2 and 3; that when they carried these papers to him and discussed with him the question of his fee he had said to them that he would be agreeable to leave the fee up to the Court; that when he was pressed further, he stated that the Court would allow him a fee of 5% of the sale price, or $7,500. The complainants advised Mr. Fisher at that time that they felt this fee was extremely unreasonable in view of their prior agreement and indicated they would employ another attorney; that Mr. Fisher then advised Mr. Nunnery that since he had filed the original bill in this cause, they could not discharge him or employ other attorneys, because the Court would not let them do that, and that Mr. Fisher stated that "he had handled the original proceedings for practically nothing because he knew that this was coming up all the time, and that this was where he was going to make his money."

It then alleges that Mr. Fisher was then and there told that they were going to get another attorney if they could and that thereafter they did confer with and employ other counsel. Their answer further sets out the fact that Mr. Fisher charged them $25 for writing or drafting the partition deed for Lot No. 4 and they allege that Mr. Fisher—

"agreed to file the Original Bill in this proceeding, and conduct the hearing thereon, for a fee of $250.00; that Mr. Fisher had been paid this fee; that, as set out in the Decree entered in this Cause on March 27, 1950, which was drafted by W. H. Fisher, said fee of $250.00 was paid to Mr. Fisher, as payment in full for all of his services to that date."

This Answer denies any liability for any fee whatever and avers that Mr. Fisher was entitled to none. Exhibited with that Answer was letter of Mid-South Title Company requiring the steps outlined therein.

On June 3, 1958, an Order was entered fixing the fees of counsel representing the parties in the Supplemental Bill, of the Guardian ad Litem William B. Leffler for Claude E. Nunnery at $500; of the Guardian ad Litem James A. Crislip for the minors and unknown defendants, at $500; and the fee of the Appraisers who had appraised the property, for their expert witness fees, at $50. In fixing the fee of counsel representing the parties in the filing of the Supplemental Bill, the Order recites the following:

"(1) Robert L. McKnight, Esquire and Erich W. Merrill, Esquire, Solicitors for Complainants, are hereby allowed a fee of One Thousand Two Hundred and Fifty ($1250.00) Dollars, for their services in

preparing and filing the Supplemental Bill herein, and representing Complainants at the hearing on said Supplemental Bill, this fee being that represented to the Court as fixed by contract with the complainants and which fee the Court finds to be more than reasonable as to amount."

On June 25, 1958, there was an Order for partial distribution of the proceeds of the sale of the Ensley Bottoms property less the fees and costs that had then been determined. That Decree states that there is withheld—

"the sum of $119.95 to cover future court costs; and further, by withholding the sum of $15,000.00, by agreement, until the disputed claim of W. H. Fisher, Solicitor, has been determined."

On June 30, 1958, the Chancellor ordered a Reference to the Clerk and Master relative to the issues raised by the petition of W. H. Fisher for attorney's fee, and directed the Clerk and Master to hear proof and report on these Orders of Reference which will be set out herein and shown along with the Report of the Clerk and Master thereon.

Pursuant to that Order of Reference, the Clerk and Master took the depositions of Fred L. Nunnery, W. J. Nunnery, Charles E. Nunnery, and Lela Orndorff. Insofar as relates to the real issue upon which the Order of Reference was made to the Master, much of the proof appears to be incompetent and exceptions thereto were sustained by the Master, but he proceeded to let the parties make the proof "for the record".

It is very clear from this proof that all of the parties complainant in the original bill were represented by their

brother, Fred L. Nunnery, in the conversations, agreements and contract with W. H. Fisher, attorney, leading up to the filing of the original bill and the steps taken in the cause until in 1957 when the contract had been made between the parties to purchase the Ensley Bottoms land. None of the complainants, save Fred L. Nunnery, had ever discussed any part of the matter with Mr. Fisher, so far as this record shows, until on September 23, 1957, when W. J. Nunnery went with Fred L. Nunnery to the office of Mr. Fisher.

During the taking of the proof before the Clerk and Master, there was introduced as Exhibit 6 to the direct examination of Fred L. Nunnery, a paper writing on the official stationery of W. H. Fisher, in the following language:

"Mr. Fred Nunnery:                                  Oct. 21, 1949

"This confirms our agreement that, on filing of the partition sale bill in Chancery, Fred L. Nunnery et al vs. Claude E. Nunnery et al, if same proceeds so as effect a sale on Tracts 1, 2, and 3, the attorney fee to be allowed solicitor for complainant, from proceeds of sale of these three tracts, shall be not more than $250.

"In case, at any time, we, as complainants desire to dismiss the bill, and we do so prior to the trial before the Court, the said fee of complainant's solicitor, W. H. Fisher, will be only $50.00, we, to pay all costs.

"/s/ W. H. Fisher"

When the proof was completed before the Clerk and Master, he reported on the items in the Orders of Reference, as follows:

## "Query I

"Was the employment contract, made on behalf of the Nunnerys with W. H. Fisher, solicitor, incident to the filing and prosecution of the original bill filed herein on December 19, 1949, terminated by the entry of the 'Decree Confirming Sales' entered on March 27, 1950, and recorded in M. B. 236, p. 81.

## "Finding

"The Contract, dated October 21, 1949, Exhibit #6 to Fred Nunnery, recites:

" 'On filing of the partition sale bill in Chancery, Fred L. Nunnery, et al. vs. Claude E. Nunnery, et al., if same proceeds so as to affect a sale on Tracts 1, 2 & 3, the attorney fee to be allowed solicitor for complainant, from proceeds of sale of these three tracts, shall be not more than $250.'

"Said decree, in the recital, at page 82 of Minute Book 236:

" 'The bill seeks a declaration of the rights and titles of the parties, and a construction of the will, and for sale of Tracts 1, 2 & 3, at this time, and a retention of the cause in Court for the sale of the other tracts at some future date * * *'

"And in the decretal part:

" 'From the funds the Clerk will pay all the cost of this cause, including a fee of $250.00 allowed by the court as a reasonable fee to W. H. Fisher, solicitor for complainants for his services to date. * * *

"The cause is retained in Court * * *, and also for the purpose of further proceedings in connection with Tracts 3, 4 & 5. The present guardian ad litem, Jack Petree, Esq. will continue to represent the minor defendants.'

"It is found that the contract is silent as to termination after the filing of the bill; that the bill sought, and the said decree adjudged, a retention in court for sale of the other (subject) tracts at a future date; representation of the minors by the guardian ad litem was expressly continued. No action was taken to indicate that the contract was so terminated. (Fisher, T. 44; F. Nunnery, Tr. 60-62.)

## "Query II

"Did the employment contract, made on behalf of the Nunnerys with W. H. Fisher, solicitor, incident to the filing and prosecution of the original bill filed herein on December 19, 1949, contemplate the continued employment of Mr. Fisher in connection with the disposition of the Bartlett and Ensley Bottoms tracts in the absence of an express agreement as to fees for the disposition of those tracts.

## "Finding

"It is found that the said contract (Exh. #6) did contemplate the continued employment of Mr. Fisher in connection with the disposition of said tracts; no sale of said tracts was then contemplated and for that reason no agreement as to fees in their connection was made at that time. (Fisher, Tr. 14-18, 34-38, 42; F. Nunnery, Tr. 51-61.)

"However, subsequent dealings between the parties reveal a course of conduct of inquiry on the part of Mr. Nunnery, as to fees for the disposition of the Bartlett tract and agreement with Mr. Fisher thereon in July 1951 (Exh. 4) and in Sept. 1957 (Exh. 5) inquiry as to fees for disposition of the Ensley Bottoms tract, but no agreement thereon. (Fisher, Tr. 11-17, 20-24, 27-30, 38-43; Nunnery, 62-71.) Such conduct of the parties compels the conclusion that agreement as to fees was also contemplated by and implicit in the contract.

## "Query III

"Has W. H. Fisher, solicitor, at the request of the Nunnerys rendered any services in connection with the Ensley Bottoms tracts since the entry of 'Decree Confirming Sales' entered on March 27, 1950, and recorded in M.B. 236, p. 81, and, if so, what were such services and the reasonable value of the same.

## "Finding

"It is found that no such services were rendered. (Fisher, Tr. 24, 44-46.)

## "Query IV

"What was the reasonable value of the Ensley Bottoms tracts on March 27, 1950.

## "Finding

"It is found that such value was $10,000.00. (Stipulation, Tr. 48-49)."

W. H. Fisher seasonably filed two exceptions to the Master's Report, which exceptions are as follows:

## "I

"In his answer to queries I, and II, the Master refers to Exhibit 6 as the contract.

"This is error: Because the contract in this case was that implied by law, both by precedent, and statute, that the Court will determine and pay fees from the proceeds of sale, in cases of this nature. Ex. 6, is not a contract to pay any definite amount, nor is it an assurance that any definite amount will be paid; it is only a limitation on the power of the Court to fix fees, as to the first three tracts. The silence as to the other tracts leaves the contract unmodified as to them.

## "II

"In the latter part of his answer to Query II, the Master made use of efforts of the litigants to reach an agreement, as indicating that the original contract required such agreement, that this was contemplated by and implicit in the contract. In this way long subsequent actions by the litigants in trying to agree, are made by the Master to add a provision to the original contract, which was not there in the beginning.

"Parties litigant are always privileged to settle their differences by agreement, and the policy of the law is to encourage this practice, and this policy is violated when efforts to reach agreements are used to add terms to the original contract."

The learned Chancellor, in disposing of the exceptions, filed a written Memorandum which is shown in the record at pp. 121-122, in which he held that the report of the

Clerk and Master was sustained by the proof, but further stated:

"The Court further considers that the conclusion of the Master, in response to Query II, that an agreement as to fee was contemplated by and implicit in the contract for the services of Mr. Fisher (Ex. 6) is sustained independently of the 'subsequent dealings between the parties' specifically mentioned in the Report of the Master."

We further said in that Memorandum that Mr. Fisher was entitled to a reasonable fee for his services—

"rendered incident to the Ensley Bottoms property to and including the 'Decree Confirming sales' entered March 27, 1950, and recorded in minute book 236, at page 81, and an allowance of such will be made upon application formally or informally presented to the Court."

On November 25, 1958, he entered his Decree in which the essence of his Memorandum Opinion is stated, and upon application made by Mr. Fisher for such fee he fixed the same at $1,000 and directed the Clerk and Master to pay that amount to Mr. Fisher out of the sale of the "Ensley Bottoms property".

W. H. Fisher saved exceptions to the action of the Chancellor in not allowing him a greater sum than $1,000; prayed, was granted, and perfected his appeal to this Court, where he has assigned errors.

Fred L. Nunnery, individually, and as Trustee for Claude E. Nunnery, and W. J. Nunnery, Charles E. Nunnery and Lela Orndorff, saved exceptions to the action of the Chancellor in allowing W. H. Fisher a fee of

$1,000, prayed, were granted, and have perfected their appeal to this Court, and filed assignments of error.

█ As we view this record, the orderly procedure would be to first dispose of the assignments filed by the original parties complainant, which are three in number, but in fact raise only one question.

In Assignment I, it is stated that W. H. Fisher should not be allowed any fee other than the $250 directed by the Decree of March 27, 1950, because "he has not rendered any additional services for the Nunnerys".

Assignment II alleges error on the part of the Chancellor because in order to pay that additional fee, "they would have to pay him more than the fee agreed upon, for the same services which he agreed to perform for the fee of $250".

Assignment III is to the effect that the Chancellor erred in fixing an additional fee, "since the agreement between Mr. Fisher and the Nunnerys contemplated that there would be an agreement as to Mr. Fisher's fee before he should render any legal services for the Nunnerys".

As to these three Assignments of Error, that which we may have to say hereinafter relative to the Assignments of Error of Mr. Fisher, shall likewise be considered, and vise versa, but suffice it to say that it is very obvious that there was a long intervening period of time after the original bill was drafted by Mr. Fisher before it was filed. That period of time extended from March 1949 to December 1949. The oath to the original petition signed by Fred L. Nunnery, has been photographically reproduced and constitutes a part of this record. This

photograph clearly shows that the typist of the bill typed it up to be sworn to on a day in March, 1949. It was not sworn to until the 21st of October, 1949, and the typed word "March" was stricken and above it was written "Oct" in longhand with ink. The day of the month was also written in longhand ink—"21st". Perhaps the time elapsing between the drafting of the bill and the date of the oath made thereto, and thereafter to the date of the filing, may have resulted in the witnesses' lapse of memory as to when certain conversations did occur or what was really intended by them, because parties were offering to purchase Tracts 1, 2, and 3, which the Decree shows was done and their contracts to purchase same confirmed by the Court, when the original bill contained no allegations that such offers were made at that time.

It is further significant that Exhibit 6, which is referred to as the contract, is dated October 21, 1949, which is the same day the original bill was sworn to before a Notary Public. Whether that instrument be referred to as a contract or a letter evidencing the terms of a contract, it is definite in three particular respects:

(1) That Mr. Fisher's maximum fee for all services rendered in connection with Tracts 1, 2, and 3, would be $250, if the tracts were sold in that proceeding, and the Court would fix the amount thereof within that limitation.

(2) It is clear that if the bill prepared by Mr. Fisher was filed and thereafter dismissed before a hearing in Court, his fee was to be "only $50.00" for the preparation of the bill and such work as he had done to the date of dismissal before any hearing by the Chancellor.

(3) It is very clear that in event there was a hearing before the Chancellor on the sale of Tracts 1, 2, and 3, the said $250, or such part thereof as the Chancellor would allow, would not include the services rendered by Mr. Fisher theretofore or thereafter in connection with Tracts 4, 5 and 6.

It is easily determined that at the time this instrument was signed by Mr. Fisher, there was contemplated by the parties a confirmation of a sale of Tracts 1, 2 and 3 on some offer then in existence. From this record it is further obvious that at the time the bill was drafted there was contemplated by the parties a sale of said property for division and partition in the usual manner, and after the sale of Tracts 1, 2, and 3, this contemplation continued as to Tracts 4, 5, and 6. This elapsed time situation which we have mentioned is fully evidenced by the fact that Exh. 3 to the direct testimony of Mr. Fisher, consisting of two sheets of paper showing notations made by him in his own handwriting on the back of circular letters, one of which is addressed to him dated March 17, 1949, and the other to Mr. L. B. Phillips at the same address and of the same date, in connection with his research of the record of deeds by which the properties were conveyed to the testator, which letters would not likely have lain around in his office or on his desk from March to October 17, when the ''Exh. 6'' to his testimony was written, and certainly is substantial circumstantial evidence that the original bill was drafted some time in March of 1949.

While we are of the opinion that, independent of that which may have taken place after this Exh. 6, which is called a contract, was written, the so-called contract

clearly supports the three above enumerated definite conclusions.  They are fully supported by that which later occurred and, more particularly, the Decree that was entered confirming the sale of Tracts 1, 2, and 3, and retaining the cause in Court for such further action to be had in connection with Tracts 4, 5, and 6.

Regardless of what we have said in comment upon the so-called contract, we are faced with the fact that the exceptions by Mr. Fisher to the Master's Report were overruled by the Chancellor and that there is a concurrence of the Findings of the Master and the Chancellor upon each and every direct response of the Master to the References.  It is said by counsel for Mr. Fisher that when the concurrence is upon a question of law, it is not binding on the appellate court.  He cites in support of that statement Vanhooser v. Cunningham, 24 Tenn. App. 480, 146 S. W. (2d) 840.  He then makes an analogy of what was said in that case to the issue in the instant cause, by saying:

"In the instant cause, the concurrence was upon the construction of a written instrument (Ex. 6), a pure question of law."

In the case he relies upon, the Clerk of the County Court and the County Judge have assumed that jurisdiction to fix the fees of counsel for services not only rendered in the case pending before that Court but also for services by counsel rendered to their clients in Chancery Court in connection with some of the matters involved.  With that situation existing, the Court in Vanhooser v. Cunningham, supra, said:

"A concurrent finding of the Master and Chancellor, or the Clerk and the County Judge, on an errone-

ous assumption of the law, is not binding on the appellate court. Crutchfield v. Mutual Gaslight Co., 3 Shan. Cas. 155.

"Ordinarily, a concurrent finding of the Master and the Chancellor as to the amount of solicitors' fees to be allowed, is not binding on the appellate court. Gibson's Suits in Chancery, 4th Ed. sec. 620; Pearson v. Gillenwaters, 99 Tenn. 446, 459, 42, S. W. 9, 63 Am. St. Rep. 844." See Gibson, 5th Ed. (Crownover), Vol. 1, Sec. 664, page 719, and citation notes thereunder.

It is, therefore, immediately discernible that we have no such parallel situation. What was done in the instant case is that taking into consideration the contents of Exh. 6, referred to as a contract, the provisions of the original decree, the actions of the parties themselves, as revealed by the competent evidence in the record, the Master and the Chancellor have concurred on the Orders of Reference as reported by the Master, and the fact that the Master makes some comment in connection with some of his conclusions, which the Chancellor does not think necessary, does not mean that their concurrence has arisen from an *erroneous assumption* of the law. It has arisen from the facts of the case, all competent evidence considered. In the case of Vanhooser v. Cunningham, supra, immediately following the last quotation therefrom above set forth, the Court said:

"However, it is within the discretion of the lower court as to whether he will allow attorneys' fees for both the complainant and the defendant to be paid out of the common fund in partition cases, and a review of this question can be had only for an abuse

of judicial discretion. Scott v. Marley, 124 Tenn. 388, 137 S. W. 492.''

■ In the instant cause the Chancellor did not submit a reference as to what would be a reasonable fee for Mr. Fisher, but in fact it was specifically reserved to be answered by him, and if necessary, fixed by him when the Master had complied with the Order of Reference. No proof of a reasonable amount was offered by either party, and the Chancellor accordingly fixed Mr. Fisher's fee at $1,000 and, in our opinion, his action insofar as this record is concerned, is reviewable only upon the question of whether he abused his judicial discretion in fixing it at that amount.

Therefore, after reviewing the cases relied upon to sustain the Assignments of Error submitted by counsel for theNunnerys, we are not convinced that any of them control the issue actually now before us. The result therefore, is that the Assignments of Error of the parties which we refer to as the Nunnerys, will be overruled.

The Assignments of Error submitted by counsel for Mr. Fisher are in number four. In substance, they are:

I and II—That the Court erred in the exercise of his discretion in fixing the fee of Mr. Fisher without taking into consideration the sale price of the Ensley Bottoms land ''commensurate with the amount received for the property, the nature of the services rendered and the severity of the tests to which the attorney's work has been and will be subjected''; that it denied Mr. Fisher the advantage of having his fee based on an amount certain; that the valuation of the property in 1950, instead of the actual price received, was an improper valuation to be used

in the fixing of the fee, in that it was not a value certain.

III and IV—These assignments are based upon what is termed an alleged error of the Chancellor in considering the contract of employment by ''adding thereto a provision that the attorney had no right to proceed unless he reached an advance agreement with the clients as to the fee for such further steps, * * * which, * * * had the full effect of vesting in the clients the right to fix the fees of the attorney, * * *'' and further, failing to hold that ''the fee fixed by client must be reasonable.''

We do not find anything in the record or the action of the Chancellor to indicate that he attempted to add any provision whatever to the alleged contract of employment or that Mr. Fisher, as counsel for the Nunnerys, would have had no right to proceed with the representation of his client without an express agreement as to fees. We simply find that the Master and the Chancellor concurred in finding that the contract of employment anticipated a reasonable agreement on the part of both counsel and his clients with respect to fees for his services for the purpose of concluding the entire matter; that counsel was willing to do so; that he was discharged by his clients for no valid reason after the litigation had lain dormant, just as the Decree had indicated, for a considerable period of time; that counsel fees for services rendered in connection with the Ensley Bottoms tract should be reckoned upon the basis of employment as found to exist by the concurrence of the Chancellor and the Master, and that one element to be considered in connection with the fixing of a proper fee for Mr. Fisher's services would be the value of the Ensley Bottoms property in 1950, when

the case was retained on the docket for the disposition of the Ensley Bottoms land at some future date.

If we understand what the Chancellor did, and we think we do very clearly, he simply held that the elements entering into Mr. Fisher's employment, as shown by all the facts necessary to be considered in fixing his fee, were the services he had rendered with respect to the interpretation of the Will as it applied to the Ensley Bottoms land; his willingness to proceed to continue his representation in court with what he understood to be the meaning of his contractual employment, by which he was to have a reasonable fee, and the value of the land in 1950.

Therefore, the thing that really concerns this Court after a careful review of the entire record, is whether or not the Chancellor was correct in applying the value of the Ensley Bottoms land in 1950 as an element in fixing the fee of Mr. Fisher, rather than the full value for which it eventually sold in the same proceedings instituted by Mr. Fisher as counsel for the Nunnerys.

Let us assume in determining whether or not the Chancellor was correct in finding what he considered the value of the land in Ensley Bottoms, as shown by the proof, in 1950 to be a proper sum for consideration in fixing the fee, and instead of showing that it was worth $10,000 in 1950 and that it sold for $150,000 in 1957, the proof had shown that it was worth $150,000 in 1950 and instead of increasing in value it decreased in value to where it was only worth $10,000 in 1957, then would the Chancellor have permitted such a 1950 value, in arriving at a proper fee for Mr. Fisher, to have influenced him in his conclusion. We think he would not.

Whatever may be said to be the meaning and agreement of the parties when this suit was first instituted, Fred L. Nunnery, acting for himself individually, as Trustee for his brother Claude, under the Will, and for his cocomplainants, in view of the fact that he himself signed and swore to the correctness of the allegations in the original bill, cannot now be heard to say that the original employment of Mr. Fisher did not comprehend a disposition of the Ensley Bottoms land in that proceeding at some date. It would be unreasonable, we think, for a client to assume the attitude of employing counsel, institute a complete proceeding covering property, a portion of which could be disposed of intermittently, and the cause be continued for a number of years, with the fee for services of counsel to be fixed at a definite figure which he says was understood to be the meaning of the contents of Exh. 6, which fixes only a maximum fee to be paid at the time of sale of one-half the number of tracts, based upon the sale price of the three so sold. Such understanding is contrary to his approach of same counsel with respect to Tract No. 4, as well as his approach to same counsel finally with reference to the Ensley Bottoms land, when he went back to him and wanted to know what his fee was going to be to carry out the requirements of Mid-South Title Company, in order that that company might issue title insurance. Regardless of what may have been understood by counsel and his client in the first instance, we are mindful of the fact that whether the services rendered had been acceptable or not, a client has a right to discharge his counsel at any stage of the proceedings and procure other counsel to represent him. That is a privilege of a client that does not operate in reverse. A lawyer engaged to represent a

client, being an officer of the court, cannot break off his engagement and refuse to perform his services without permission of the Court wherein the cause is pending.

In Spofford v. Rose, 145 Tenn. 583, 609, 237 S. W. 68, 76, quoting from 6 Corpus Juris 670, 677, our Supreme Court approved the following:

"The relation of attorney and client is peculiar, in that the law permits the termination thereof in a manner not recognized in other contracts. Either party may dissolve the relation for cause and the client may dissolve it without cause." See Vol. 7, C. J. S. Attorney and Client sec. 119, p. 950.—Right to change attorney.

Again, on page 609 of 145 Tenn., on page 76 of 237 S. W., in the same case, quoting with approval:

"The law is well settled that a client has the right to discharge his attorney at any time, either with or without cause, and this is true, although the motion for permission to substitute is restricted by persons claiming to be the assignees of the interest of such parties where there is a controversy as to such assignment."

Again, on page 610 of 145 Tenn., on page 76 of 237 S. W., in the same case:

"And authorities might be multiplied along this line. Among others Todd v. Superior Court, 181 Cal. 406, 184 Pac. 684, 7 A. L. R. 938. But we refrain from further discussion of this proposition of law because it is so thoroughly well settled, we think, as that it admits of no question. Of course, the principle is recognized that where the relation is severed *this*

*does not determine the question of compensation,
but that is the subject of contest between the parties
in their own way."* (Emphasis supplied.)

The above quotations are to be found in the Opinion
prepared by Justice McKinney for the Supreme Court,
following his statement on page 607 of 145 Tenn., on page
75 of 237 S. W., saying:

"We will now dispose of the errors assigned by
Col. Smithson and others; the substance of the first
four being that the other courts erred in substituting
certain named attorneys for W. B. Smithson as
counsel for certain of the Spofford relations."

And in the same Opinion, at page 611, of 145 Tenn. at
page 76 of 237 S. W., the Supreme Court said:

"The general rule of law being as set forth above,
and the Chancellor and the court of civil appeals
having concurred in holding that these parties had
the right, under the facts, to discharge their original
counsel, we are bound by said concurrent finding.
There is no assignment of error to the effect that
there is no evidence to support their finding. This
does not preclude counsel from recovering from their
clients just and adequate compensation for services
rendered."

Without setting out the evidence of the respective
parties, it seems clear from the testimony of Fred L.
Nunnery about his conversation with Mr. Fisher after he
had arranged a conference where his brother, W. J.
Nunnery, would be present, that he knew when and if
the Ensley Bottoms land was disposed of under the
original bill filed for the Nunnerys by Mr. Fisher, there

would be the necessity for the payment of a reasonable attorney fee to the attorney. That conversation is set out in the record at pp. 104-105. Certainly the evidence of Mr. Fisher bears out the same conclusion, and not only does Mr. Fisher by his signed statement, referred to as Exh. 6, express himself as willing to abide by the fee to be fixed by the Court at the several stages of the proceedings, but he so expressed himself in that same position in the conversation with both brothers.

We think that the whole picture of the situation should be considered: The sale price of the Lots 1, 2, and 3, as confirmed on the offers made, total $6,900. There was no disagreement at that time, at the Court fixing a reasonable fee with the maximum not exceeding $250 for that particular service. That fee is a bit more than 3% of the total sale price of the three lots. Now if we consider that Mr. Fisher was willing to have the Court fix that fee for his services as to those lots at a maximum of approximately 3% on confirmation of the sale, and we assume that under the circumstances of this case, had he completed the entire transaction, his then action would indicate that he did not construe his whole fee contract with the Nunnery's to mean that he would receive anything like 5% of the sale value from the sale of the Ensley Bottoms land when sold, which would on a sale value of $150,000 be $7,500. His attitude in the fixing of the former fee by the Court at a figure not exceeding $250, and in the absence of any proof in this record by other attorneys of what a reasonable fee would have been, we think Mr. Fisher's own attitude and acts would have limited him, had he performed all of the services, to a fee not in excess of $4,500. Also, after Mr. Fisher was discharged, and other counsel employed to proceed on the

"blueprint requirements" of the Mid-South Title Company to perfect title to the Ensley Bottoms land so that it would issue title insurance policy thereon, the counsel employed by complainants, after they had discharged Mr. Fisher, fixed their fee at $1,250, and in addition, that "blueprint" which may or may not have been necessary to perfect title but was a necessary requirement by it for the issuance of its title insurance contract, caused the Court to allow fees to two different additional guardians ad litem of $1,000, or $500 each, making the total counsel fees, other than that of Mr. Fisher, to be paid out of the funds derived from the sale of the Ensley Bottoms land of $2,250, which was accomplished by and through the use of the original bill filed by Mr. Fisher plus the supplemental bill.

We think that where the counsel and the parties, by and with an understanding such as this record reveals, and more particularly the Decree by which the cause was retained in court for disposition of the Ensley Bottoms tract, that to some extent each of them—that is, the attorney and the parties,—are entitled to share in this enhanced value of these properties. It seems to be nothing but equity to so consider.

If a fee of $4,500 would have been reasonable for counsel who instituted this proceeding and had finished the entire work needed, which would have been an amount equivalent to 3% of the sale value, under the circumstances we are satisfied that a minimum reasonable fee for Mr. Fisher would be $2,250, for we cannot bring ourselves to consider the value of the Ensley Bottoms property of $10,000 in 1950 as an element in fixing his proper fee in 1957, when the value of the same property, with no

proven improvements of any consequence, was $150,000, and to that extent we think the Chancellor erred.

Since both parties appealed from the Decree of the Chancellor, and as we view the cause, we think it is further equitable for the entire cost in both courts to be paid out of the funds in the hands of the Chancery Court of Shelby County.

Judgment will be rendered here in favor of the appellant, W. H. Fisher, and his fee fixed at $2,250, and to that extent only the Decree of the Chancellor is modified.

The cause will be remanded to the Chancery Court of Shelby County, there to be concluded in accord with the judgment of this Court in this cause and the orders and decrees of the Chancery Court heretofore made unappealed from, and such orders and decrees of that Court as may hereafter be necessary.

Carney and Bejach, JJ., concur.